690 P.2d 1029

**Thomas G. LAZO, Plaintiff-Appellee,**

v.

**BOARD OF COUNTY COMMISSIONERS OF BERNALILLO COUNTY, New Mexico, and William E. Jimerson, Sheriff of Bernalillo County, New Mexico, Defendants-Appellants.**

**No. 15420.**

Supreme Court of New Mexico.

Nov. 13, 1984.

Gene E. Franchini, Albuquerque, for plaintiff-appellee.

Hunter Geer, Robert C. Resta, Albuquerque, for defendants-appellants.

## OPINION

RIORDAN, Justice.

Thomas G. Lazo (Lazo) brought suit against the Bernalillo Board of County Commissioners and William E. Jimerson, Bernalillo County Sheriff, (County) for breach of collective bargaining agreement, declaratory judgment, and injunctive relief. Lazo requested back pay, restoration of seniority, and reinstatement of employment. After a non-jury trial, judgment was entered in favor of Lazo. The County appeals. We reverse.

The issue on appeal is whether the district court erred in granting judgment in favor of Lazo.

Lazo was employed by the County as a court security officer on March 14, 1977, and became a member of the Bernalillo County Clerical and Technical Employees Union (Union). The Union and the County operated under a collective bargaining agreement, which specifies a three step grievance procedure, step one being that an aggrieved employee must submit a written grievance to the department head within five working days of the alleged occurrence.

During the 1981 legislative session, NMSA 1978, Section 4–41–11.1 (Repl.Pamp. 1984), was enacted. It provides:

A. Court security officers of county sheriff departments of class A counties shall meet all the prerequisites for permanent appointment as peace officers as stated in Section 29–7–8 NMSA 1978.

B. All court security officers provided for pursuant to Subsection A of this section shall be commissioned as peace officers with full powers and responsibilities while within the confines of the county courthouse or as otherwise specified by the court.

C. *Court security officers employed by county sheriff departments of class A counties on January 1, 1977 shall be exempted from the provisions of Subsection A of this section.* (Emphasis added.)

NMSA 1978, Section 29–7–8 (Repl.Pamp. 1984), provides in pertinent part:

A. Notwithstanding any provisions of any general, special or local law to the contrary, no person shall receive an original appointment on a permanent basis as a police officer to any law enforcement agency in this state unless such person:

\* \* \* \* \* \*

(4) is found, after examination by a licensed physician, to be free of any physical, emotional or mental condition which might adversely affect his performance as a police officer;

\* \* \* \* \* \*

(6) has previously been awarded a certificate by the director attesting to such person's satisfactory completion of an approved basic law enforcement training program.

The maximum age for attendance at the New Mexico Law Enforcement Academy basic law enforcement training program is thirty-five years. Lazo was forty-nine years old when he was hired by the County and was fifty-three years old in 1981 when Section 4–41–11.1 was enacted. Lazo also suffers from high blood pressure which renders him unqualified for the physical exertion required by the academy training program. However, under Subsection 4–

41–11.1(C), other court security officers in worse health and older than Lazo were exempted from the Section's requirements. Had Lazo been hired a mere ten weeks earlier or had the effective date been different, he too would have been exempted under the statute.

By letter dated Monday, July 26, 1982, the County terminated Lazo's employment for his failure to complete the required basic law enforcement training program. On Friday, July 30, 1982 (the fourth working day after his termination), Lazo met with various Union officials who expressed a desire to aid Lazo in his first-step grievance procedure, prepared the necessary written grievance, and agreed to submit Lazo's grievance to the undersheriff on the following Monday, August 2, 1982 (the fifth and final working day after Lazo's termination for submission of the grievance). A Union steward was responsible for the timely delivery of the grievance to the undersheriff. However, on Wednesday, August 4, 1982, it was discovered that the Union steward had forgotten to timely deliver Lazo's grievance. The grievance was subsequently delivered on that same day, but the undersheriff refused to waive the time limits and rejected the grievance. For a two and one-half month period, the Union attempted to rectify the situation, but to no avail. Lazo was subsequently advised by Union officials to seek the aid of an attorney, and the instant case was commenced on October 22, 1982.

Lazo sought, among other things, a declaratory judgment that Section 4–41–11.1 was prospective in its application and, thus, Lazo should not be required to attend and complete the basic law enforcement training program. During trial, Lazo also argued that Section 4–41–11.1 was *unconstitutional as applied to him.* As an affirmative defense to Lazo's claims, the County asserted that Lazo was barred from recovery for failure to exhaust his administrative remedies.

The district court concluded that it had jurisdiction over the parties and the subject matter, that the doctrine of exhaustion of administrative remedies was inapplicable in this case, that Section 4–41–11.1 operated prospectively only, and that, as applied in this case, Section 4–41–11.1 violated both the equal protection and due process clauses of the federal and state constitutions.

On appeal, the County alleges three points as error:

I. The district court's refusal to find that Lazo failed to serve the attorney general, pursuant to NMSA 1978, Section 44–6–12, despite allegations that Section 4–41–11.1 is unconstitutional.

II. The district court's refusal to conclude that it lacked jurisdiction due to Lazo's failure to serve the attorney general and to comply with administrative procedures.

III. The district court's failure to conclude that Section 4–41–11.1 applies to all employees hired after January 1, 1977 and that reinstatement of Lazo would require the County to violate state law.

Points I and II are dispositive of this appeal. Therefore, we do not address point III.

**I. Failure to Serve the Attorney General.**

■ NMSA 1978, Section 44–6–12 of the Declaratory Judgment Act, NMSA 1978, Sections 44–6–1 to 15, provides in pertinent part:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding * * *. *[A]nd if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.* (Emphasis added.)

Section 44–6–12 has not been construed by New Mexico courts. Thus, Lazo urges this Court to interpret Section 44–6–12 as requiring service upon the attorney general only when it is alleged that a statute, *on*

*its face*, is unconstitutional; not where, as in this case, a statute is alleged to be unconstitutional only in its application to a particular person. We cannot accept this interpretation.

 Section 44–6–12 makes no such distinction. It simply states that when constitutionality of a statute is at issue, the attorney general *shall* be served and given an opportunity to be heard. While we are sympathetic to Lazo's present situation as the *only* court security officer adversely affected by the operation of Section 4–41–11.1, and although it appears that his constitutional challenges to the statute have merit, "[w]e are bound by the rule that courts are not free to construe unambiguous legislation; they may not read language into a statute that is not there, particularly if it makes sense as written." *Hansman v. Bernalillo County Assessor*, 95 N.M. 697, 700, 625 P.2d 1214, 1217 (Ct. App.1980). Thus, under Section 44–6–12, the judgment of the district court must be reversed for Lazo's failure to serve the attorney general.

## II. Failure to Comply with Administrative Procedures.

Section 39 of the collective bargaining agreement dictates procedures for aggrieved employees such as Lazo. It provides in pertinent part:

> Step 1—The aggrieved Employee *must, within five (5) working days of the alleged occurrence*, submit a written grievance form to the department head. (Emphasis added.)

It further provides that failure by either management or the employee to follow the requirements of the grievance procedure mandates adjudication of the matter in the other's respective favor.

 It is undisputed that the Union, acting on Lazo's behalf, failed to timely deliver Lazo's grievance to the department head. Thus, step one of the grievance procedure was not followed by Lazo, and therefore, under the terms of the contract, this failure ends the matter. "It is not within the province of the courts to write a new contract for the parties. Absent any ambiguity, our duty is confined to interpreting the contract which they made for themselves." *Thompson v. Occidental Life Insurance Co.*, 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977).

Thus, although we are sympathetic to Lazo's plight under the circumstances as they exist in this case, Section 44–6–12 and the Union contract are clear and unambiguous. The matter should have been adjudicated in favor of the County. The district court judgment is reversed.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.