738 P.2d 903

**WESTERN BANK, a New Mexico Banking Corporation, Plaintiff-Appellant,**

v.

**Gene MATHERLY and Melba Matherly, his wife; Richard H. MacAllister and Vivian I. MacAllister, his wife, Defendants-Appellees.**

No. 16725.

Supreme Court of New Mexico.

June 22, 1987.

Rehearing Denied July 13, 1987.

**32**

Burroughs & Rhodes, Jefferson R. Rhodes, Alamogordo, for plaintiff-appellant.

S. Thomas Overstreet, Alamogordo, for defendants-appellees.

## OPINION

RANSOM, Justice.

This is an action for declaratory judgment filed in the district court of Otero County to determine the conflicting security interests of Western Bank and Gene and Melba Matherly (Matherly) as those interests may have been affected by the law of contracts and the secured transactions sections of the Uniform Commercial Code (UCC), NMSA 1978, Sections 55-9-101 to 55-9-507 (Orig.Pamp. and Cum.Supp.1986). Plaintiff Western Bank, asserting it had become the lienholder first in priority, unsuccessfully sought a determination that it would be entitled to proceeds from the sale of certain equipment after repossession by defendant Matherly. Western Bank appeals from the district court's judgment that Matherly is entitled to the proceeds free from any claim of Western Bank. We affirm.

Matherly originally sold real property and equipment to Merkling and Bell, doing business as Tire Tech, Inc. (Merkling-Bell), for $350,000, of which $52,000 was secured by the equipment. An agreement provided for placing in escrow a bill of sale and special bill of sale to the equipment, and provided that such bill of sale would not be delivered until the full amount of the purchase price was paid. Deeds to the real property were likewise placed in escrow. In addition to the remedies set forth in the escrow agreement, Matherly obtained on the equipment two security agreements which were perfected and properly filed of record on January 18 and March 22, 1983.

The escrow agreement provided that, upon default of Merkling-Bell, Matherly could declare the unpaid balance due and payable, foreclose the security interest and make demand on the personal guarantors; or, Matherly could cancel the agreement, considering all payments as liquidated damages and rent, and take delivery of all instruments and funds in the possession of the escrow agent.

The agreement between Matherly and Merkling-Bell also recognized that Merkling-Bell would borrow $50,000 from the First National Bank of Alamogordo, a debt to be secured by subordination of the Matherly security interest in the equipment. Subsequent to that borrowing, Merkling-Bell unsuccessfully approached the First National Bank for more operating capital, and then successfully approached Western Bank about refinancing the original $50,000 and borrowing an additional $20,000. Accordingly, the debt to the First National Bank was paid in full, and the First National Bank released of record the security agreement it had obtained. The First National Bank did not assign or transfer to Western Bank the security agreement or its interest in the equipment. There was no agreement between Matherly and Western Bank to subordinate in favor of Western Bank the Matherly interest in the equipment. Instead, Western Bank simply obtained from Merkling-Bell a security agreement which was properly filed of record on May 4, 1983.

When Merkling-Bell defaulted, Matherly declared a forfeiture under the contract of sale, and obtained from escrow the special warranty deed to the real property and the special bill of sale to the equipment. These documents were recorded. Matherly then sold both the real property and the equipment to MacAllister who owes Matherly at least $48,000 for the purchase of the equip-

ment. Western Bank is owed in excess of $48,000 by Merkling-Bell, for which indebtedness Western Bank claims a security interest in the equipment and a right to proceeds from the resale of the equipment by Matherly to MacAllister.

This appeal arises out of Western Bank's challenge of the trial court's findings that (1) the interest of Merkling-Bell, and persons claiming through them to the collateral, e.g., Western Bank, was terminated under the forfeiture provision of the contract of sale upon which Merkling-Bell defaulted; and that (2) Matherly did not agree to subordinate to Western Bank the Matherly interest in the personal property.

The essence of the legal argument presented by Western Bank is that a security interest in personal property governed by the controlling secured transactions sections of the UCC may not be conjunctively forfeited with an interest in real property under a real estate contract in New Mexico.

Western Bank would have this Court hold that Matherly was satisfied by the cancellation of the contract and that the security interest of Western Bank survived and became paramount to all other parties.[1] Western Bank argues that in *Davies v. Boyd*, 73 N.M. 85, 385 P.2d 950 (1963), this Court held that once the seller disaffirms the contract and retains as liquidated damages the payments made up to that time, seller has no further right to enforce other provisions of the contract. Western Bank supports its position further by relying on the case of *Kimura v. Wauford*, 104 N.M. 3, 715 P.2d 451 (1986), which emphasized the importance of the *Davies* holding regarding the election of rights under the same contract.[2]

However, the instant case is controlled not by Matherly's security interest, but by the fact that, upon default and forfeiture by Merkling-Bell, Western Bank lost any security interest it had by and through Merkling-Bell. The trial court's finding in this regard was correct. In *Campos v. Warner*, 90 N.M. 63, 559 P.2d 1190 (1977), this Court considered whether a conditional vendee could create in his lessee any greater interest in the property leased than was possessed by the vendee. We held that, when the interest in property of a conditional vendee is forfeited upon default, the forfeiture is enforceable against all claiming through the vendee. Persons claiming through the vendee take their interest in property subject to all claims of title enforceable against the vendee.

[T]his court has adopted a principle in cases dealing with the rights of judgment creditors of vendees under real estate contracts that is persuasive with reference to the issue at hand. In *Warren v. Rodgers*, 82 N.M. 78, 475 P.2d 775 (1970), this court considered whether a

1. Western Bank further contends that Matherly had no competing security interest in the equipment because of noncompliance with the UCC in repossession and disposition of the collateral. However unnecessary to its decision, the trial court found that Matherly properly took possession of the personal property pursuant to the security agreement. There is substantial evidence that Matherly's possession of the equipment was proper under Section 55-9-503, which allows the secured party the right to possession of the collateral upon default. The trial court further found that Matherly sold the collateral and the real property to MacAllister in a commercially reasonable manner. Section 55-9-504(3) permitted the sale of the collateral in the private sale which was accomplished by agreement between Matherly and MacAllister. Pursuant to Section 55-9-504(4), such sale "discharges the security interest under which it is made and any security interest or lien subordinate thereto." The Western Bank security interest was subordinate to the Matherly security interest.

2. Western Bank's analysis fails to recognize the fact that Matherly had two separate agreements in effect with Merkling-Bell, i.e., an escrow agreement *and* a security agreement that created an additional interest in the equipment. In fact, the escrow agreement provided that the "security agreement shall be *in addition to* the security provided by this agreement...." (Emphasis added.) It does not appear as though the parties intended that foreclosure of the security interest and cancellation of the agreement would be mutually exclusive remedies. "A secured creditor is not required to elect a remedy. He can take any permitted action or combination of actions." *Citicorp Homeowners, Inc. v. Western Surety Co.*, 131 Ariz. 334, 336, 641 P.2d 248, 250 (Ariz.App.1981); *accord Ruidoso State Bank v. Garcia*, 92 N.M. 288, 587 P.2d 435 (1978) (the purpose of Section 55-9-501 is to abolish the doctrine of election of remedies).

vendee under a real estate contract has an interest in real estate to which a judgment lien can attach. In that case the purchaser of the real estate defaulted on his contract and the seller declared a forfeiture and regained possession. This court stated (82 N.M. at 79, 80, 475 P.2d at 776, 777):

> The contract of sale never having been completed by the debtor-vendee, he had no vested legal interest in the real estate on which the lien could attach * * *

> A judgment creditor can claim no greater rights than a vendee might have asserted in offering to cure a default. The vendor had no contractual obligation with the judgment creditor and, therefore, was not bound to accept him in lieu of the vendee.

In accord is *Petrakis v. Krasnow*, 54 N.M. 39, 56, 213 P.2d 220, 230 (1949). Also see *Mutual Building & Loan Ass'n of Las Cruces v. Collins*, 85 N.M. 706, 516 P.2d 677 (1973) which overruled a portion of *Warren v. Rodgers*, *supra*, on a point that is not relevant to this case. *Id.* at 64, 559 P.2d at 1191. This principle is modified in the *Collins* case only to the extent that the equitable interest of a conditional vendee in possession is subject to the attachment of a judgment lien and foreclosure in the same manner as ordinary suits for the foreclosure of mortgages.

We hold that, where there are no intervening equities whereby the vendor may be estopped to enforce a forfeiture against one claiming through a conditional vendee of personal property, a vendee can create no greater interest in personal property than is possessed by the vendee, and one claiming a UCC security interest through the vendee takes his interest in the property subject to all claims of title enforceable against the vendee, including forfeiture upon default.

Finally, with respect to its challenge of the court's finding that Matherly would not have agreed to subordinate to Western Bank his interest in the personal property, Western Bank relies upon *Grise v. White*, 355 Mass. 698, 247 N.E.2d 385 (1969). In *Grise* it is stated that bankruptcy courts uniformly construe subordination agreements to afford to the security interest thereby given priority the practical benefits of asserting the subordinator's claim. Here, however, contrary to the facts in *Grise*, Matherly did not agree to subordinate his security interest to Western Bank. Our Court has firmly established that " '[i]t is not within the province of the courts to write a new contract for the parties * * * * [The court's] duty is confined to interpreting the contract which [the parties] made for themselves.' " *Lazo v. Board of County Comm'rs*, 102 N.M. 35, 38, 690 P.2d 1029, 1032 (1984) (quoting *Thompson v. Occidental Life Ins. Co.*, 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977)). The court cannot do for the party that which they failed to do for themselves. *Kimberly, Inc. v. Hays*, 88 N.M. 140, 537 P.2d 1402 (1975). A subordination agreement by implication is not recognized; it must be expressed. 69 Am.Jur.2d *Secured Transactions* § 478 (1973); *see also* NMSA 1978, § 55-9-316 official comment (the rights of a person entitled to priority cannot be adversely affected by an agreement to which he is not a party).

For the above stated reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS, J., concur.