576 A.2d 208

**Viola M. GARDNER et al.**

v.

**BOARD OF COUNTY COMMISSIONERS OF ST. MARY'S COUNTY, Maryland.**

**No. 103, Sept. Term, 1989.**

Court of Appeals of Maryland.

July 5, 1990.

64

Alfred A. Lacer (Kenney and Lacer, P.A., on brief), Lexington Park, for petitioners.

Theodore P. Weiner (Joseph R. Densford, J. Ernest Bell, II, Weiner & Weiner, P.A., on brief), Leonardtown, for respondent.

J. Joseph Curran, Jr., Atty. Gen., Carolyn A. Quattrocki, Asst. Atty. Gen. for State of Md., for amicus curiae.

Argued Before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, CHASANOW and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired, Specially Assigned), JJ.

RODOWSKY, Judge.

Respondents, the County Commissioners of St. Mary's County (the County), after having been petitioned to do so,

created a special tax district in order to build public roads in a large residential subdivision that was partially developed. On the merits the principal issue is whether the ordinance creating the special tax district was initiated by the requisite number of petition signatures. Procedurally, the principal issues are whether this litigation may properly proceed until the Attorney General of Maryland has been notified and until the owners of all of the lots in the tax district have been joined as co-defendants with the County.

Longview Beach is a platted subdivision of 870 lots lying between Maryland Route 238 and the Wicomico River.[1] At least some of the roads shown on the plat have been laid out and graded, but none is surfaced to current County standards.

Prior to July 21, 1987, the owners of 236 lots in Longview Beach petitioned the County to improve certain of the private roads in Longview Beach and to incorporate those roads, so improved, into the County roads system. This petition was presented pursuant to a public local law authorizing the County to construct "on or along private roads after the approval of a petition of a majority of the property owners whose property will benefit from the proposed construction or improvement, requesting that the roads be taken into the county roads system." St. Mary's County Code (1978, 1989 Cum.Supp.), § 109–2.C.(1).[2]

---

**1.** There are actually 1,200 lots depicted on the subdivision plat of Longview Beach. Contiguous lots which are held in the same ownership, however, may be treated as one unit for all purposes relevant to this appeal. Thus, in this opinion the term "lot" means one of those units, unless otherwise specified.

**2.** St. Mary's County Code (1978, 1989 Cum.Supp.), § 109–2.C in its entirety reads:
"(1) The County Commissioners may construct and improve roads and drainage incident to construction or improvement on or along private roads after the approval of a petition of the majority of the property owners whose property will benefit from the proposed construction or improvement, requesting that the roads be taken into the county road system. In addition, when requested by the property owners and on receipt of a petition signed by a

On July 21, 1987, the County adopted Ordinance No. 87–10, the Longview Beach Special Taxing District Ordinance (the Ordinance). The tax district initially consists of 466 of the 870 lots in Longview Beach. The Ordinance specifically refers to block and lot designations, as shown on the recorded plat, in order to create a tax district consisting of "all improved lots and all lots fronting on one of the roads to be reconstructed." In other words, the district initially consists of unimproved lots abutting a proposed County road, improved lots abutting a proposed County road, and improved lots abutting a private road, but unimproved lots abutting a private road will not be assessed initially. The Ordinance further provides that "[i]f improvements are constructed on lots that are not currently included in the taxing district ... such lots shall, in the assess-

---

majority of the property owners affected, the County Commissioners may construct and install sidewalk systems. In the exercise of the powers granted by this subsection, the County Commissioners, by proper ordinance passed in accordance with the provisions of § 3 of Article 25 of the Annotated Code of this state, may adopt all necessary rules and conditions for the acceptance, construction and maintenance of roads or other authorized improvements by the county. The ordinance shall provide for the method of determination of the annual benefit assessments levied against the properties benefiting from the improvements for the purpose of reimbursing the county for the cost of the improvements and the time and manner of payment, but not to exceed twenty (20) years. Annual benefit assessments are a first lien upon the property against which they are assessed, until paid, subject only to prior state and county taxes, and if any property is sold for state and county taxes and there remains a surplus, then the County Commissioners may petition the Circuit Court to secure payment of their lien.

"(2) Before the powers granted by this subsection are exercised, there must first be the petition of the property owners requesting improvements, public hearing upon the petition after ten (10) days' notice in a newspaper regularly published in St. Mary's County, approval of the petition by the majority vote of the County Commissioners and passage of a resolution pursuant to the authority of the section, setting forth the improvements being constructed, the property owners affected and all material terms of the annual benefit assessments levied to pay the cost of the improvements, or any reasonable portion of them, as determined by the County Commissioners."

ment year following such construction or subdivision, be included in the taxing district at the appropriate rate."

The total costs of the proposed County roads in Longview Beach are to be paid by benefit assessments levied against the lots comprising the tax district from time to time.[3]

The criteria for determining the initial lots to be assessed create sections of the tax district which are wholly surrounded by lots which are not part of the tax district. Those criteria also produce an initial tax district of 466 lots. Inasmuch as the petition under § 109-2.C of the County Code was signed by the owners of 236 lots, the petition was signed by a majority of the owners of the lots in the tax district, as defined in the Ordinance. One issue on the merits of this case is whether the § 109-2.C requirement for "a petition of the majority of the property owners whose property will benefit from the proposed construction" has been satisfied.

---

**3.** The annual benefit assessment against a particular lot is determined by the following formula:

"1. The 'total benefit assessment' shall represent total costs of reconstruction and improvements as described above....

"2. The benefit assessment to be paid by those lots in the taxing district which front on one of the roads to be reconstructed *and* are not improved with a house, shall be $50.00 per year for each year the taxing district is in effect. This shall represent the 'annual benefit assessment for unimproved lots'.

"3. The 'total benefit assessment for unimproved lots' shall be $50.00 times the number of unimproved lots fronting the roads to be reconstructed (247 lots at the time of passage of this ordinance) times twenty years.

"4. The 'total benefit assessment for improved lots' shall be the 'total benefit assessment' minus the 'total benefit assessment for unimproved lots'.

"5. The 'annual benefit assessment for improved lots' shall be the 'total benefit assessment for improved lots' divided by the number of improved lots in the subdivision (219 lots at the time of passage of this ordinance) divided by twenty years.

"6. The benefit assessment described above shall be divided by the number of appropriate lots in existence in the subdivision on the first of May of each assessment year to determine the annual cost to each lot."

This litigation began when Viola M. Gardner and others, the Petitioners, filed in the Circuit Court for St. Mary's County an order for appeal, followed by a petition for appeal, under Maryland Rules of Procedure, Ch. 1100, Subtitle B, "Administrative Agencies—Appeal From." The circuit court granted the County's motion to dismiss, but allowed Petitioners leave to amend.

In their amended complaint Petitioners alleged that they are "property owners and taxpayers in Longview Beach whose properties will be subject to a special taxing district tax." They sought a judgment declaring the Ordinance to be void and enjoining the County from implementing it. They alleged that fewer than half of the lot owners in Longview Beach petitioned for creation of the tax district. The amended complaint also alleged that the County's action violated Art. XV of the Maryland Declaration of Rights and the fifth and fourteenth amendments to the United States Constitution.

At no time during the course of this litigation have the Petitioners sent notice of their suit to the Attorney General of Maryland, despite the County's having raised by answer Md.Code (1974, 1989 Repl.Vol.), § 3–405(c) of the Courts and Judicial Proceedings Article (CJ).[4] The County's answer also asserted that "at least 466 property owners are to

---

**4.** CJ § 3–405 in its entirety reads:

"(a) *Person who has or claims interest as party.*—(1) If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party.

(2) Except in a class action, the declaration may not prejudice the rights of any person not a party to the proceeding.

(b) *Municipality or county as a party.*—In any proceeding which involves the validity of a municipal or county ordinance or franchise, the municipality or county shall be made a party and is entitled to be heard.

(c) *Role of Attorney General.*—If the statute, municipal or county ordinance, or franchise is alleged to be unconstitutional, the Attorney General need not be made a party but, immediately after suit has been filed, shall be served with a copy of the proceedings by certified mail. He is entitled to be heard, submit his views in writing within a time deemed reasonable by the court, or seek intervention pursuant to the Maryland Rules."

be in this taxing district and would be possibly affected by the outcome of this case and, therefore, should be included as necessary parties in this case."

The circuit court essentially severed for separate trial, on stipulated facts, the issue involving the number of signatures on the petition. That court concluded that the owners of a majority of the benefited lots had not signed so that the Ordinance was void.

The County appealed to the Court of Special Appeals which vacated the judgment of the circuit court and remanded for further proceedings, to be conducted after notice to the Attorney General in accordance with the requirements of CJ § 3–405(c). *Board of County Comm'rs of St. Mary's County v. Gardner,* 79 Md.App. 417, 557 A.2d 260 (1989). The appellate court concluded that § 3–405(c) must be followed even though the trial court had not predicated its judgment on constitutional grounds. The Court of Special Appeals, however, expressly disclaimed "ruling that notice to the Attorney General is jurisdictional." *Id.* at 419, 557 A.2d at 261.

The intermediate appellate court also held that the owners of lots assessed under the Ordinance were directly impacted by any ruling on its validity. Relying on CJ § 3–405(a) and Maryland Rule 2–211, the court held that "[i]nclusion of persons owning property within the scope of the [O]rdinance is, therefore, mandatory." *Id.* at 421, 557 A.2d at 262.[5] The court did not reach the merits.

---

5. Maryland Rule 2–211(a) reads:

"**(a) Persons to be Joined.**—Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence
(1) complete relief cannot be accorded among those already parties, or
(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

We issued the writ of certiorari at the request of the Petitioners. That petition included the following questions:

"1. Whether the failure to notify the Attorney General in a declaratory judgment action, pursuant to ... Section 3–405(c), is harmless error when the Circuit Court enters the declaratory judgment based on non-constitutional grounds.

. . . .

"3. Whether the Plaintiffs, in a taxpayer's suit seeking a decree enjoining the implementation of an ordinance illegally creating a special taxing district, are required to join all other property owners located in the special taxing district pursuant to Maryland Rule 2–211 (1989).

. . . .

"5. Whether the ordinance creating a special taxing district is illegal or ultra vires since a class of property owners who will be taxed in the future if they improve their property were not permitted to vote on, nor counted toward, the proposed taxing district."

The Attorney General also obtained leave to file a brief as amicus curiae, in order to address only the issue involving CJ § 3–405(c).

### I

As a threshold matter the County submits that the circuit court had no jurisdiction. We consider this contention, despite the absence of a cross petition for certiorari, because lack of jurisdiction over the subject matter may be raised at any time. Md.Rule 2–324.

Petitioners' first pleading invoked the B Rules which confer no substantive right to judicial review of legislative enactments. The County seems to say that the misconcep-

---

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff."

tion by Petitioners of their remedy rendered the circuit court powerless to act in any aspect of the case. Courts have jurisdiction, as in the case here, to rule that an initial claim for relief does not state a claim upon which relief can be granted. Maryland Rule 2–341 permits amendments which "shall be freely allowed when justice so permits." An amendment may seek to "change the nature of the action." Md.Rule 2–341(c)(1).

## II

We now turn to the effect of Petitioners' violation of CJ § 3–405(c). By the clear terms of that statute the Petitioners should have given notice to the Attorney General when they filed their suit alleging, *inter alia,* the unconstitutionality of the Ordinance. The purpose of § 3–405(c) is to give the Attorney General "the opportunity to decide whether to intervene on behalf of the State or any State agency affected." *Pressman v. State Tax Comm'n,* 204 Md. 78, 86, 102 A.2d 821, 826 (1954).

CJ § 3–405(c) is § 11 of the Uniform Declaratory Judgment Act, 12 U.L.A. 516 (1975). One court has said:

"The purpose of this provision is to enhance the quality of constitutional litigation by notifying the Attorney General of the pending action.... While it is not contemplated that the Attorney General will actually appear in every case in which he is served, still, from a copy of the proceedings, he can identify the parties and issues and decide whether the State, with the forces it can muster, should step in and support the enactment. If, in a particular case, the Attorney General decides to appear in court, as this statute permits, his presentation of evidence and argument may provide the court with that additional crucial matter which will demonstrate that an enactment is constitutional. Having this important goal as its basis, this statutory notice provision deserves to be vigilantly enforced."

*Sendak, Attorney General v. Debro,* 264 Ind. 323, 327, 343 N.E.2d 779, 781–82 (1976).

### A

■ The Attorney General submits that Petitioners' failure to give notice deprives the circuit court of jurisdiction to enter a declaratory judgment. There are decisions which speak of a lack of jurisdiction to proceed, absent the notice. See *Smith v. City of Florence,* 288 Ala. 61, 256 So.2d 893 (1971); *Sullivan v. Murphy,* 279 Ala. 202, 183 So.2d 798 (1966); *Plantation Pipeline Co. v. City of Bremen,* 225 Ga. 607, 170 S.E.2d 398 (1969); *Williams v. Kaylor,* 218 Ga. 576, 129 S.E.2d 791 (1963); *Hydraulic Press Brick Co. v. City of Independence,* 38 Ohio App.2d 37, 311 N.E.2d 873 (1974); *McCabe v. City of Milwaukee,* 53 Wis.2d 34, 191 N.W.2d 926 (1971); *Tobin v. Pursel,* 539 P.2d 361 (Wyo. 1975).

The Supreme Judicial Court of Massachusetts has taken the view that notice to the Attorney General and an opportunity for that official to be heard "are conditions precedent to the entry of a declaratory decree." *Court St. Parking Co. v. City of Boston,* 336 Mass. 224, 226, 143 N.E.2d 683, 685, *appeal dismissed,* 355 U.S. 272, 78 S.Ct. 331, 2 L.Ed.2d 257 (1957). "But the lack of power to enter such a decree of course does not impair the general equitable jurisdiction of the Superior Court which was invoked by the bills of complaint to prevent irreparable injury by enjoining invalid action." *Id.* In *Court St. Parking,* the lower court entered a declaratory decree, without notice to the Attorney General. It upheld the constitutionality of a condemnation statute. The Supreme Judicial Court, in an appeal at which the Attorney General appeared, agreed that the statute was constitutional. For that reason the court considered it unnecessary to determine whether the notice requirement was fulfilled by the Attorney General's appearance at the appellate level. The court reversed the declaratory decree and entered a mandate dismissing the complaints on the merits, saying that "[t]he same end of a determination of

the validity of the statutes is now served[.]" 336 Mass. at 232, 143 N.E.2d at 689.

In *Lumberton Mun. Util. Dist. v. Cease*, 596 S.W.2d 601 (Tex.Civ.App.1980), the trial court had temporarily enjoined a tax district from levying or collecting any taxes. The complaint had raised both constitutional and nonconstitutional grounds, but the complainants had not notified the Attorney General. The injunction was predicated on nonconstitutional grounds. On appeal the court held that "[t]he failure to give notice to the Attorney General did not deprive the trial court of jurisdiction to grant relief on other legal [*i.e.*, nonconstitutional] grounds." *Id.* at 604.

We need not fathom how other courts have used "jurisdiction" in their opinions on the issue before us because, under Maryland law, failure to give notice is not jurisdictional in the fundamental sense. In *Givner v. Cohen*, 208 Md. 23, 116 A.2d 357 (1955), the dismissal of a bill for declaratory judgment was affirmed. Among many reasons supporting the result this Court pointed out that "[a] bill for a declaratory decree or judgment cannot be maintained, at least against a demurrer, without compliance with" the notice requirement. 208 Md. at 31, 116 A.2d at 360. The principal reason for dismissal, however, was that the issue of the constitutionality of warrantless searches by officers of the Baltimore City Health Department was not presented in a sufficiently concrete fashion to be justiciable. We so interpreted *Givner* in *Hatt v. Anderson*, 297 Md. 42, 46, 464 A.2d 1076, 1078–79 (1983). If failure to give notice deprives a circuit court of jurisdiction over the subject matter, it would have been unnecessary in *Givner* to say any more than that to support dismissal.

In other cases this Court and the Court of Special Appeals have noted a violation of CJ § 3–405(c) without dismissing for want of subject matter jurisdiction or, indeed, without imposing any sanction whatsoever. *See Harden v. Mass Transit Admin.*, 277 Md. 399, 404 n. 3, 354 A.2d 817, 819–20 n. 3 (1977); *Board of County Comm'rs of Calvert County v. East Prince Frederick Corp.*, 80 Md.App. 78, 80

n. 1, 559 A.2d 822 n. 1, *cert. granted,* 317 Md. 609, 565 A.2d 1033 (1989); *Bama, Inc. v. Anne Arundel County,* 53 Md.App. 14, 26 n. 4, 451 A.2d 1261, 1268 n. 4 (1982), *cert. denied,* 295 Md. 529 (1983).

Thus, the circuit court was not deprived of jurisdiction over the subject matter.

## B

■ The true issue concerning Petitioners' violation of CJ § 3–405(c) is whether a sanction should be imposed or a remedy fashioned and, if so, what it should be. Any sanction or remedy should be designed to achieve the purpose of the statutory requirement.

If, without notice to the Attorney General, a trial court proceeds to judgment and invalidates an enactment on constitutional grounds, an appropriate remedy, if requested, may well be to vacate the judgment and remand for further proceedings after notice to the Attorney General. *See Sendak v. Debro, supra; Lazo v. Board of County Comm'rs of Bernalillo,* 102 N.M. 35, 690 P.2d 1029 (1984). If, under the same assumption, and after remand, an Attorney General were to choose not to be heard on the rehearing, the trial court may reenter its prior judgment. *See Lakewood Pawnbrokers, Inc. v. City of Lakewood,* 182 Colo. 315, 512 P.2d 1241 (1973).

In the instant case the circuit court declared the Ordinance to be invalid on nonconstitutional grounds. The Attorney General's motion and amicus brief in this Court evidence that the Attorney General now has notice, but the Attorney General indicates no interest in arguing to us that the circuit court's judgment on the merits was erroneous. Indeed, the Attorney General agrees that "[t]he circuit court held the [O]rdinance invalid on nonconstitutional grounds." Brief of State of Maryland as *Amicus Curiae* in Support of Appellee, at 3. In Part IV, *infra,* we shall hold that the circuit court ruled correctly on the merits. Under all of these circumstances the purpose of CJ § 3–405(c) has

been substantially served. There is no need further to remedy Petitioners' failure to give notice.

## C

■ The County, disagreeing with the Attorney General's interpretation of CJ § 3–405(c), submits that Petitioners' allegation that the Ordinance violates St. Mary's County Code § 109–2.C is an allegation that the Ordinance is "unconstitutional" within the meaning of CJ § 3–405(c). The argument is that the term "unconstitutional" embraces any organic law, the violation of which by a dependent law renders the latter invalid. We disagree. That has not been the interpretation in practice when an ordinance of a charter county is alleged to be invalid for violation of the county charter or of the Express Powers Act (even when those allegations were coupled with claimed violations of Maryland Const., Art. XI–A). See, *e.g.*, *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 252 A.2d 242 (1969); *Scull v. Montgomery Citizens League*, 249 Md. 271, 239 A.2d 92 (1967). `

## III

Petitioners also seek reversal of the requirement laid down by the Court of Special Appeals that Petitioners join the owners of the other lots in Longview Beach tax district in order for the case to proceed. The issue is one of compulsory joinder and is primarily controlled by Md.Rule 2–211(a), see n. 5, *supra.* The Declaratory Judgment Act, CJ § 3–405(a), see n. 4, *supra,* also contains a compulsory joinder provision. "Generally there is no difference in the rule as to necessary parties between a declaratory judgment proceeding and any other proceeding *in personam.*" *Maryland Naturopathic Ass'n v. Kloman*, 191 Md. 626, 631, 62 A.2d 538, 540 (1948) (emphasis in original omitted); *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 456, 56 A.2d 144, 148 (1947). We shall therefore analyze whether the other owners in the tax district must be made parties,

either individually or as members of a class, in terms of Md.Rule 2–211(a).

The Court of Special Appeals rested its holding on both aspects of Md.Rule 2–211(a)(2) when it said:

"Disposition of the action, in the absence of [other lot owners in the district], will impede or impair their ability to protect a claimed interest. Further, public officials charged with implementing the [O]rdinance may incur multiple or inconsistent obligations absent joinder of necessary parties in this suit. Inclusion of persons owning property within the scope of the [O]rdinance is, therefore, mandatory."

79 Md.App. at 421, 557 A.2d at 262.

Petitioners submit that this is a taxpayers' action against public officials and that, in that type of action, joinder of other property owners has not been required. The County says that the instant action is not a taxpayers' suit at all.

### A

In their complaint Petitioners describe themselves as "property owners and taxpayers in Longview Beach whose properties will be subject to a special taxing district tax." The complaint does not go on to say that Petitioners bring the action for the benefit of all other taxpayers in the tax district. The County argues, without citation of authority, that the omission is fatal.

One aspect of the concept of a taxpayer's suit concerns the standing of the plaintiff to sue.

"Under Maryland law, the doctrine of taxpayer's standing is not as narrowly limited as it is under the law of some jurisdictions. 'In Maryland, taxpayers have standing to bring suit to challenge the constitutionality of a statute when the statute as applied increases their taxes.' "

*State v. Burning Tree Club,* 315 Md. 254, 291, 554 A.2d 366, 385, *cert. denied,* —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989) (footnote omitted) (quoting *Murray v.*

*Comptroller,* 241 Md. 383, 391, 216 A.2d 897, 901, *cert. denied,* 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966)). And *see James v. Anderson,* 281 Md. 137, 377 A.2d 865 (1977); *Citizens Planning & Hous. Ass'n v. County Executive of Baltimore County,* 273 Md. 333, 329 A.2d 681 (1974). In *Montgomery County v. Board of Supervisors of Elections for Montgomery County,* 311 Md. 512, 516 n. 3, 536 A.2d 641, 643 n. 3 (1988), we held that a challenge to charter amendments, based on conflict with public general law, could be asserted by a single taxpayer. The ability of the plaintiff to proceed in these cases has not turned on whether the plaintiff alleged that the suit was brought for the benefit of other taxpayers similarly situated.

### B

The Court of Special Appeals concluded that Petitioners' attack on the Ordinance subjected the County "to a substantial risk of incurring multiple or inconsistent obligations by reason of the ... claimed interest" of the nonjoined lot owners. Md. Rule 2–211(a)(2). Perhaps the most forceful illustration of the lack of any substantial risk to the County of incurring multiple or inconsistent obligations is found in the "test" cases. In those permissibly collusive actions a governmental body or private party seeks out a taxpayer to bring an action in order to obtain an adjudication concerning the validity of some public action, and the party seeking the determination pays the fees of counsel for the taxpayer plaintiff. See, *e.g., Eberhart v. City of Baltimore,* 291 Md. 92, 433 A.2d 1118 (1981); *Reyes v. Prince George's County,* 281 Md. 279, 380 A.2d 12 (1977); *Wilson v. Board of County Comm'rs of Allegany County,* 273 Md. 30, 327 A.2d 488 (1974); *Panitz v. Comptroller,* 247 Md. 501, 232 A.2d 891 (1967); *Maryland Indus. Dev. Fin. Auth. v. Meadowcroft,* 243 Md. 515, 221 A.2d 632 (1966); *Waring v. Board of Trustees,* 243 Md. 513, 221 A.2d 631 (1966); *Lacher v. Board of Trustees,* 243 Md. 500, 221 A.2d 625 (1966); *Lerch v. Maryland Port Auth.,* 240 Md. 438, 214 A.2d 761 (1965); *Hitchins v. City of Cumberland,* 215 Md.

315, 138 A.2d 359 (1957); *Frostburg v. Jenkins,* 215 Md. 9, 136 A.2d 852 (1957) (Brief of Appellant at 2); *Hitchins v. City of Cumberland,* 208 Md. 134, 117 A.2d 854 (1955); *Melvin v. Board of County Comm'rs of Anne Arundel County,* 199 Md. 402, 86 A.2d 902 (1952); *Hitchins v. Cumberland,* 177 Md. 72, 8 A.2d 626 (1939); *Wyatt v. State Roads Comm'n,* 175 Md. 258, 1 A.2d 619 (1938). In *Reyes, supra,* we said that

"[a]lthough of course not binding upon them, it seems plain that the true object of this suit is to affect third parties; that is, by the precedential effect of a hoped-for decision by this Court upholding the validity of the act authorizing the bond sale, to discourage any further attack by others on the legality of the bonds, and by that tactic encourage their purchase...."

281 Md. at 285, 380 A.2d at 15.

Here, evaluating the question of compulsory joinder as of the time when the parties were aligned before the circuit court, the precedent of a judgment favorable to the County deters against multiple litigation by other taxpayers as much as the precedent in a "test" case.

In the Court of Special Appeals, Petitioners argued that the County suffered no substantial risk of multiple or inconsistent liabilities by citing *Holt v. Moxley,* 157 Md. 619, 147 A. 596 (1929). That case involved a benefit assessment for street improvements in a municipality in Prince George's County. In an earlier challenge by a different taxpayer the assessment legislation had been sustained by the circuit court. In *Holt v. Moxley* a second taxpayer challenged the same benefit assessment legislation on the same grounds. This Court applied the concept, traditional to equity practice, of virtual representation and held that the second action was barred by the first. In view of our holding premised on precedent, it is unnecessary for us to intimate any opinion on the possible application here of the *res judicata* aspects of *Holt v. Moxley.* We do address, however, the rationale employed by the Court of Special

Appeals in disposing of Petitioners' citation to *Holt v. Moxley.*

■ The Court of Special Appeals undertook to distinguish that case on the basis that it was a decision "reached prior to the adoption of Maryland Rules 2–231 [Class Actions] and 2–211 and § 3–405(a)(1) which require that all affected parties be given an opportunity to participate." 79 Md.App. at 420, 557 A.2d at 261.

The revision of the Maryland Rules which became effective July 1, 1984, did not abrogate all of the case law of pleading and practice which theretofore existed at law and in equity, and the new Maryland Rules do not purport to state within their text the universe of Maryland pleading and practice law. Rule 1–201(c) states, in part, that "[n]either these rules nor omissions from these rules supersede common law or statute unless inconsistent with these rules." Further, as originally proposed by the Rules Committee, Rule 2–211 did not contain the introductory phrase, "[e]xcept as otherwise provided by law." *See* 10 Md.Reg., Issue 10, at S–17 (May 13, 1983). The quoted introductory phrase was added to the rule "to ensure that current case law on point is not abrogated." *See* Letter of August 1, 1983, from Judge John F. McAuliffe, Chairman, to the Judges of this Court, on file in the office of the Rules Committee.[6]

Thus, Rules 2–211 and 2–231 do not change the practice of allowing a taxpayer action without joinder of other taxpayers similarly situated.

---

6. The August 1, 1983, letter presents a series of proposed revisions resulting from public comment and from requests for changes or further consideration made by the judges of this Court in a meeting on June 23, 1983, with members of the Rules Committee. The full text of the relevant portion of the letter's description of changes in Rule 2–211 reads:

"Acknowledging the Court's concerns about section (a) of this Rule, the [Comment Review S]ubcommittee proposes that the phrase 'except as otherwise provided by law' be inserted at the beginning of the section to insure that current case law on point is not abrogated...."

## C

■ Nor do we agree with the Court of Special Appeals' conclusion that lot owners in the district have interests, the protection of which may be impaired or impeded by adjudication of this action without joinder of those owners. That "interest," we infer, is in obtaining the roads and would be an "interest" of those property owners who favor the public roads under the payment scheme provided by the Ordinance. But viewing a proposed public improvement as a benefit is not the kind of an interest with which Rule 2–211 and CJ § 3–405(a)(1) are concerned.

Rule 2–211 is substantially derived from Fed.R.Civ.P. 19. "[T]he body of federal law developed in connection with [Fed.Rule 19] is useful authority in construing this rule." Niemeyer & Richards, *Maryland Rules Commentary,* at 95 (1987). Describing Fed.R.Civ.P. 19, 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 19.07[2.–0], at 19–99 (2d ed. 1989), says: "The 'interest relating to the subject of the action,' that makes an absent person a party needed for just adjudication, must be a legally protected interest, and not merely a financial interest or interest of convenience."

Thus, where the U.S. Army Corps of Engineers sought an injunction requiring a Florida real estate developer to cease further dredging of canals and to restore the canals to a depth of five to ten feet, the individual lot owners were not indispensable parties. *See United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293 (5th Cir.1976); *United States v. Joseph G. Moretti, Inc.,* 526 F.2d 1306 (5th Cir.1976). And *see Jeffries v. Georgia Residential Fin. Auth.,* 678 F.2d 919 (11th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982) (class consisting of all landlords participating in federal rent subsidy program need not be joined in action challenging constitutionality of procedures for eviction of subsidized tenants); *Demeter, Inc. v. Werries,* 676 F.Supp. 882 (D.C.C.D.Ill.1988) (grain warehousers, challenging insurance statute in action against state official, not required to join their customers who would benefit from the statute).

By the very act of assessing, the County considers that the public roads proposed by the Ordinance will increase the value of the lots to be initially assessed in Longview Beach. Under the analysis set forth above, that is not a legally protected interest which compels joinder. Although Maryland appellate courts have not previously expressly addressed the question, cases factually analogous to that before us have arisen. These cases have some precedential value because a court is obliged to notice, *sua sponte,* the want of an indispensable party. *See Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553 (5th Cir.1985); *McCowen v. Jamieson,* 724 F.2d 1421 (9th Cir.1984); *Weisberg v. United States Dep't of Justice,* 631 F.2d 824 (D.C.Cir.1980); *Brown v. Christman,* 126 F.2d 625 (D.C.Cir.1942). And *see Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936, 945–46 (1968) ("court of appeals should, on its own initiative, take steps to protect the absent party") (dicta).

The action to enjoin construction of the original Chesapeake Bay Bridge was brought by a single taxpayer who named only the members of the State Roads Commission as defendants, although the economic benefit to property owners on Kent Island in the vicinity of the eastern terminus of the bridge and along its approach roads had to be extremely significant. *See Masson v. Reindollar,* 193 Md. 683, 69 A.2d 482 (1949). Other cases in which a challenge to a public improvement was allowed to proceed without joinder of all those who might claim benefit from the proposed public work include *Leonardo v. County Comm'rs of St. Mary's County,* 214 Md. 287, 134 A.2d 284, *cert. denied,* 355 U.S. 906, 78 S.Ct. 332, 2 L.Ed.2d 260 (1957) (erosion prevention special tax district); *Dinneen v. Rider,* 152 Md. 343, 136 A. 754 (1927) (bonds and assessments for water lines and sanitary and storm sewers in initial subdistrict of Baltimore County Metropolitan District); *Weber v. Probey,* 125 Md. 544, 94 A. 162 (1915) (water and sewer bond issue with supporting tax); *Leser v. Wagner,* 120 Md. 671, 87 A. 1040, *aff'd,* 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230 (1913)

(street paving in Baltimore City); *Hyattsville v. Smith,* 105 Md. 318, 66 A. 44 (1907) (sidewalks in Hyattsville); *Baltimore v. Ulman,* 79 Md. 469, 30 A. 43, *aff'd,* 165 U.S. 719, 17 S.Ct. 1001, 41 L.Ed. 1184 (1894) (street paving in Baltimore City); *Ulman v. Mayor & City Council of Baltimore,* 72 Md. 587, 20 A. 141 (1890), *reargument denied with opinion,* 72 Md. 609, 21 A. 711 (1891) (same); *Baltimore v. Keyser,* 72 Md. 106, 19 A. 706 (1890) (street lighting in Baltimore City).

## IV

■ We turn to the merits. The circuit court concluded that "the majority of the property owners whose property will benefit from the proposed construction or improvement," St. Mary's County Code, § 109–2.C(1), had not petitioned the County to build the roads. At a chambers conference the circuit judge had identified that issue as a threshold question. As requested by the court, the parties stipulated to the number of lots in Longview Beach (870), the number selected for initial assessment (466), and the number petitioning for the improvements (236). The circuit court necessarily concluded that the 404 nonabutting and unimproved lots in Longview Beach which were excluded from initial assessment would "benefit from the proposed construction or improvement" within the meaning of § 109–2.C(1).

Section 109–2.C(1) addresses two aspects of the process, the petition by property owners requesting an ordinance and the ordinance providing the method for fixing the annual benefit assessments. Prior to the enactment of Ch. 681 of the Acts of 1978, § 109–2.C(1) had limited petitioning property owners to those whose property "abuts on the road to be constructed or improved," and provided for the annual benefit assessment to be levied against the "abutting properties." *Id.* Chapter 681 enlarged the class of property owners for both purposes from owners of abutting lots to owners of all benefited lots.

In laying the initial special benefit assessment in Longview Beach, the County concluded that the 466 improved and unimproved but abutting lots in Longview Beach were benefited, but that the 404 unimproved, nonabutting lots were not benefited.[7] The County took the same approach in deciding that the owners of unimproved, nonabutting lots were not eligible to vote.

The standard for judicial review is set forth in *Leonardo v. County Comm'rs of St. Mary's County, supra,* 214 Md. at 308–09, 134 A.2d at 284, where we said:

> "In the establishment of improvement districts, *within the restrictions of the applicable law,* broad discretion is vested in the municipal authorities, and this discretion is conclusive in the absence of evidence that its exercise was procured by fraud or that it is manifestly arbitrary or unreasonable, or that the assessment is palpably unjust and oppressive."

(Emphasis added).

Here the County's treatment of the unimproved, nonabutting lots is contradictory. In assessing not only improved lots abutting the proposed roads but also unimproved lots abutting the proposed roads the County found that unimproved lots enjoy a benefit. In assessing improved lots not abutting the proposed roads the County found that lots which do not abut the proposed roads also enjoy a benefit. The omission of the unimproved, nonabutting lots from the assessment, and the omission of the owners of those lots

---

7. Depositions of the Director of Public Works of St. Mary's County and of two officials in the Public Works Department were taken by the Petitioners and those depositions were filed with the clerk of the circuit court prior to decision in this case. Excerpts from the deposition of the Director of Public Works have been included by the County in the record extract, apparently without objection. It is not clear whether these depositions were treated as evidence which was before the circuit judge at the time of decision. We shall assume that the depositions are in evidence. They simply explain, however, what is implicit in the Ordinance itself, namely that the County had concluded that the nonabutting, unimproved lots were not benefited by the new roads.

from the count of eligible voters, cannot be explained on the basis of absence of any benefit.

In form the County has attempted to structure a tax district composed only of certain specified lots, consisting of the first members of a class which will open up to admit unabutting lots as they are improved. The prospective members of the class are limited to lots in Longview Beach. The Ordinance determines now that the unimproved, nonabutting lots will be assessed. It simply defers to some indefinite time in the future, not greater than twenty years, the imposition of any assessment.

The legal effect of the Ordinance is to create a tax district consisting of the Longview Beach subdivision. The Ordinance in effect finds all lots in the subdivision are benefited to an extent sufficient to support some assessment.[8] Under the Ordinance as we construe it, that is sufficient to require the owners of unimproved, nonabutting lots to be counted in determining whether the petition under § 109-2.C has been presented by "the majority of the property owners whose property will benefit from the proposed construction."

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A MANDATE AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ST. MARY'S COUNTY.

---

8. Of course, the assessments may be classified in relation to different degrees of benefit between different classes of property.