[Civil No. 2914. Filed January 27, 1930.]

[284 Pac. 350.]

DEAN WOODWARD, CITY OF PHOENIX, F. J. PADDOCK, Mayor of the City of Phoenix, WILLIAM ROER, JAMES A. GODWIN, DAVID P. KIMBALL and O. B. MARSTON, Commissioners of the City of Phoenix, GEORGE H. TODD, City Manager, and JOSEPH C. FURST, City Clerk of the City of Phoenix, Appellants, v. FOX WEST COAST THEATERS, a Corporation, Appellee.

Messrs. Moeur & Moeur, for Appellant Woodward.

Mr. Henry J. Sullivan, Mr. Austin O'Brien and Mr. William C. Eliot, for Appellants City of Phoenix and Others.

Messrs. Chalmers, Fennemore & Nairn and Mr. J. Early Craig, for Appellee.

ROSS, J.—This is an action brought under the Uniform Declaratory Judgments Act (sections 4385–4390, art. 12, chap. 93, Revised Code of 1928) by Fox West Coast Theaters, a corporation, to secure the judgment of the court as to the validity of a lease from the city of Phoenix to it of the northwest corner of block 23, being 150 feet on Washington Street by 200 feet on First Street, known as City Hall Square, in Phoenix, Maricopa county, Arizona, said lease bearing the date of July 19th, 1929, and being for the period of fifty years, commencing on said date and ending July 19th, 1979, at a yearly rental of $14,000, payable in monthly installments of $1,166.66. By the terms of the lease plaintiff agreed to construct on the premises within two years a building to cost not less than $300,000, adaptable to one or more of the uses or purposes of amusement, mer-

cantile, commercial and offices, and to execute a bond to the city in the sum of $200,000, conditioned that said building would be constructed within two years (which bond was subsequently executed) and to pay said rental $7,000 in advance and the balance as it became due; also to pay to the city, in addition to rent, a percentage of the value of improvements erected equivalent to the city, county and state tax rate and public assessments for each of said years. There are many other covenants, but as no question is raised as to form or terms of the lease, its substance as above stated is sufficient for the purposes of this controversy.

All of the defendants are public officers of the defendant city of Phoenix, except Dean Woodward, who is a taxpayer of the defendant city. It is alleged that Woodward as such taxpayer on August 29th, 1929, caused to be served on plaintiff and the defendant city of Phoenix and each of the members of the city commission, the city manager, and city clerk a written notice objecting to lease, claiming it was void or invalid and voidable for eleven reasons therein set forth. The prayer for relief is twofold: First, for the establishment of the validity of the lease and, second, to quiet the plaintiff's title as lessee. The answer of defendant Woodward consists of a demurrer and a reassertion of the grounds set out in his written notice of protest. The answer of the city, the commission, and other defendant officers of the city is, besides the demurrer, in effect that they do not know whether the grounds assigned by Woodward invalidate the lease or not, but, if such grounds do, they deem it their duty to so assert, and they accordingly adopt as their answer Woodward's answer and ask the judgment of the court thereon.

The court overruled the demurrer, and upon evidence submitted and the pleadings entered judgment

declaring the lease a valid and subsisting contract. He also entered judgment quieting plaintiff's lease title.

It would seem, in view of the improvements contemplated, their extent and the cost thereof, that plaintiff should, if possible, be assured that the lease is valid before making improvements. The building proposed to be constructed will become a part of the realty, and, should the lease be void or invalid and voidable, the investment would be a total loss to the plaintiff. When the validity of the lease is challenged on the ground of lack of power in the city to make it, or the incapacity of the plaintiff to make the contract, or any of the other grounds urged, safe and sound business demands that such questions be settled before the expenditure of so large a sum as $300,000, and such questions should be settled as early as convenient, because the covenant to pay the stipulated monthly rental begins at the commencement of the lease, to wit, July 19th, 1929.

Section 4386 of the Uniform Declaratory Judgments Act (Rev. Code of 1928) reads as follows:

"Any person interested under a deed, will, written contract or other writing, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof."

The questions presented by this record involve the validity of the lease contract and also certain ordinances or resolutions of the city commission passed with a view of complying with the provisions of the city charter authorizing the leasing of real estate

belonging to the city. The city is a party to the contract, and the ordinance hereafter referred to being its method of expressing the collective will necessarily brings into question the validity of both the contract and the ordinances. The case therefore falls within the terms of the statute and is a proper one for a declaratory judgment if the questions raised are, as we said in *Morton* v. *Pacific Construction Co., ante,* p. 97, 283 Pac. 281, "real and not theoretical" and the defendants have a real interest in them. The interest of the plaintiff of course is too apparent to need stressing.

The first point made on this appeal by defendant Dean Woodward is that his interest and the interest of the other defendants is not real. His contention, by adoption, is made by the city and its public officers, who are defendants. It is argued, therefore, the demurrer should have been sustained. The city holds the legal title to the piece of land leased for the use and benefit of the inhabitants of the city. One of the city's taxpayers is contending that the city's agents have undertaken to make a lease thereof contrary to law and without authority, or, if authorized, the lease was irregularly made. The landlord is likewise questioning its power and right to make the lease. Perhaps, as defendants contend, the landlord would be estopped to deny the validity of the lease were the power to make it plain and unquestioned, but the city being a municipal corporation can act only under powers expressly granted or necessarily implied. We know of no reason why the present officers of the city, or their successors, cannot bring into question the validity of the ordinance authorizing the lease and thus the validity of the lease itself. The city is interested, as all governmental agencies are, in ascertaining, at the earliest possible moment, if the powers attempted to be

exercised actually exist, and the one dealing with it is equally entitled to have the question settled. We think also that Woodward, as a taxpayer and resident of the city, would have the right to institute proceedings to prevent the city's leasing the property if no authority exists therefor, or if the rental was unreasonably or unconscionably inadequate, or if the leasing was fraudulent or collusive.

The controversy here is over the validity of the ordinances and also the lease contract and falls within the statute (section 4386, Uniform Declaratory Judgments Act, above quoted), which provides that:

"Any person interested . . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

We think the proper parties, both plaintiff and defendant, are present; that the pleadings show both have an interest in the subject matter, and that the questions involved are "real and not theoretical." The demurrer was therefore properly overruled.

The power and right to lease land or buildings of the city is conferred, and the manner of exercising such power is prescribed by section 2 of chapter IV of the Charter of the City of Phoenix, which reads as follows:

"Section 2. As the legislative organ of the City of Phoenix, the Commission, subject to the provisions and restrictions of this Charter, shall have the power by proper ordinances or resolutions, to carry out each and every power, right and privilege herein and hereby vested in the City of Phoenix, and by such legislation to enforce said rights, powers and obligations, and to secure the performance of all obligations and indebtedness to others. And in addition to the powers hereinabove enumerated and referred

to, the city, and the Commission acting for and in its behalf, shall have the further powers hereinafter enumerated and set forth, to-wit: . . .

"(39) To provide for the lease of any land or buildings now or hereafter owned by the city; but all leases shall be made at public auction to the highest responsible bidder at the highest monthly rent, after publication of notice thereof for at least ten (10) days, stating explicitly the time and conditions of the proposed lease; provided, that the Commission may in its discretion reject any and all bids."

On June 22d, 1929, the city commission passed an ordinance or resolution providing for a public auction of a lease of the above-described premises and repealing all ordinances or parts of ordinances in conflict therewith and declaring an emergency. Such ordinance stated explicitly the time, terms and conditions of the proposed lease and was published and posted in the manner and for the time provided by the city charter. Upon the date fixed for such auction, July 11th, 1929, plaintiff submitted the only bid made, and its bid was accepted, and thereafter, on July 19th, 1929, the lease was executed. The regularity of the ordinance, its contents, and the publicity of the sale, are not questioned. These were in strict compliance with the city charter.

But it is contended because of a provision in the city charter authorizing the city commission to sell the city's real property under certain circumstances, and an initiated measure passed thereunder, the commission was deprived of the power to lease. This provision is contained in the same section of the charter as the provision with reference to leasing and reads:

"(42) To provide for the sale of such portions of the real property belonging to the city not needed or not likely to be needed within a reasonable future time; such sale shall be made to the highest bidder

after published notice for not less than twenty (20) days; and the Commission shall have the right to reject any and all bids.''

For many years block 23 had been occupied by the city hall, but in 1927 a new city hall was provided for in connection with the new county courthouse, and block 23 except the southwest corner thereof occupied by the fire department, was no longer needed for governmental purposes. The city commission, being aware that it could under the charter either sell or lease the block, or hold it without doing either, conceived the idea of obtaining an expression from the qualified voters of the city as to their wishes, and accordingly, on July 8th, 1927, passed an ordinance or resolution submitting to such voters the following question: ''Shall the City Commission of the City of Phoenix be authorized to sell the Block of the City of Phoenix commonly known as the City Hall Block, to the highest and best bidder?'' which was voted upon and approved by the voters on August 16th, 1927. The commission thereafter took action in accordance with the charter to sell said block either as a whole, or all of it, except the southwest corner occupied by the fire department, and was unable to obtain any bids.

As we understand the contention of the defendants it is that the city commission, having sought authority from the qualified voters to sell and been given such authority, can pursue no other course. This contention is wrong, because such expression from the voters added nothing to the powers already possessed by the city commission. Such expression signified nothing more than a consent or willingness of the voters that the commission proceed to exercise the power given it by the charter to sell the block and a disposition on the part of the commission to be guided by the instructions of the voters.

The ordinance or resolution seeking the consent or authority of the voters to sell was not submitted as an amendment to the charter and was never handled or treated as such. It was not filed, as section 2 of article 13 of the Constitution provides amendments shall be, with the Governor of the state and was not approved by him. The charter powers granted to the commission to lease were not affected by such ordinance or resolution.

The next contention of defendants is directed at the plaintiff's capacity to enter into the contract or to do business in Arizona. The plaintiff is a California corporation, and under the law (article 6, chapter 14, Revised Code of 1928) was required to do certain things and receive a license from the corporation commission to do business, and was prohibited from transacting any business in Arizona until it had complied with the law and been licensed. The contention that plaintiff had not qualified is contrary to the stipulated facts, one of which is "that plaintiff . . . was and became on the 19th day of July, 1929, and prior to the execution by it of the lease described in the complaint, duly licensed and qualified and authorized to do business in the County of Maricopa, State of Arizona as a foreign corporation." We do not think that, because plaintiff was not qualified and licensed during the negotiations leading up to the lease, it would affect the validity of the lease. It was qualified when the lease was executed. That appears to be sufficient.

Another objection to the lease is that it is void because the charter of the plaintiff expires by its own terms in 1970, and that it cannot contract beyond the stated period of its own existence. The plaintiff was incorporated August 20th, 1920, and according to its articles its corporate existence expires fifty years from that date or on August 20th,

1970, nine years before the termination of the lease. Under the laws of its creation the plaintiff may have its existence extended for another period, not exceeding fifty years, upon application before its present charter expires (section 401, Civil Code of California), which it would no doubt do if at that time it was a live and going concern and had not in the meantime sold or assigned its lease, as it may do under the terms of the lease.

As is said in *Hill* v. *Atlantic & N. C. R. Co.,* 143 N. C. 539, 9 L. R. A. (N. S.) 606, 55 S. E. 854, 864:

"It has been settled by the authorities that such a lease is certainly valid for the period of the corporate life of the lessor, and will extend beyond that period if the charter is renewed and the lessor's corporate existence is thereby extended, and by this process it may endure for the full term, and provision is made in this lease to meet just such a contingency. 23 Am. & Eng. Enc. of Law (2d Ed.) 781; Noyes on Intercorporate Rel. § 201; 5 Thompson on Corp. § 5896; 3 Cook on Corp. p. 2594; Baldwin's Am. Railroad Law, p. 458; *Gere* v. *Railroad,* 19 Abb. N. C. (N. Y.) 193; *Railway* v. *Railway,* 51 Fed. 309, 2 C. C. A. 174; Id., 163 U. S. 592, 16 Sup. Ct. 1173, 41 L. Ed. 265; Wood on L. & T. § 61, p. 144; *Brown* v. *Schleier,* 118 Fed. 981, 55 C. C. A. 475."

Defendants argue that a different rule should be applied where, as here, the lessor is a municipal corporation, because of the public interest. No authority for the distinction is given. When the land leased is no longer needed for governmental purposes, which is the situation here, and is held by the municipality in its proprietary capacity, the principles governing leases between private parties certainly would apply.

This disposes of all of the objections to the lease that were assigned and argued in defendants' briefs, and we find no merit in them.

In our opinion the lease is valid, and we so declare. Whether the judgment quieting plaintiff's title as lessee is correct, we need not decide.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.