53 A.3d 509

MICHAEL, LLC

v.

8204 ASSOCIATES LIMITED LIABILITY COMPANY.

No. 0601, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Sept. 26, 2012.

Patrick C. Mckeever (Miller, Miller & Canby, on the brief) Rockville, MD, for Appellant.

David W. Brown (Knopf & Brown, on the brief) Rockville, MD, for Appellee.

Panel: EYLER, DEBORAH S., WOODWARD and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

LAWRENCE F. RODOWSKY (Retired, Specially Assigned), J.

Presented here is a declaratory judgment action seeking construction of an easement. The servient estate is owned by Montgomery County, Maryland (the County) and is the subject of a General Development Agreement (the Agreement) between the County and the plaintiff-appellant, Michael, LLC (Michael). The dominant estate is owned by the defendant-appellee, 8204 Associates Limited Liability Company (8204 Associates). The Circuit Court for Montgomery County granted 8204 Associates' motion to dismiss, concluding that the case did not present a justiciable controversy.[1] For the reasons set forth below, we shall reverse and remand.

The material facts are as set forth in Michael's complaint and in the exhibits thereto. The properties involved adjoin one another along the west side of Fenton Street in Silver Spring. The dominant estate, 8204 Fenton Street, is improved by a two-story office building. The servient estate, known as Lot 3, is currently a County-owned, surface parking lot, lying immediately north of 8204 Fenton Street.

On the north side of the building at 8204 Fenton Street, at the second floor level, is a door that gives access to a pedestrian bridge on Lot 3 over a drainage swale. The area of the bridge is approximately 7.72 feet by 10 feet. By an easement and maintenance agreement dated April 25, 1990 (the Easement), the County granted 8204 Associates, its successors and assigns, "an easement and right-of-way for the pedestrian bridge located on" Lot 3. The easement and maintenance agreement further reads:

---

1. The County was joined as a defendant to the complaint. It has not participated in this appeal.

"TO HAVE AND TO HOLD said easement together with the rights and privileges pertinent to its proper use and benefit by 8204 Associates, its successors and assigns[,] until such time as the building to which the pedestrian bridge is an integral entrance no longer exists."

The current use of the easement was explained by counsel at oral argument. A publications business is conducted on the dominant premises. Trucks delivering supplies are able to drive on the surface parking area of Lot 3 to the pedestrian bridge. The trucks are unloaded by moving the supplies across the bridge directly to their intended destination on the second floor of the building at 8204 Fenton Street.

Public policy of the County, as reflected in the Sector Plan for the Silver Spring Central Business District, includes creating low cost housing incentives by converting publicly owned surface parking lots into housing. On December 2, 2005, the then Montgomery County Department of Public Works and Transportation issued a request for proposals for mixed use development of Lot 3. Michael responded, and, after extensive negotiations, Michael and the County entered into the Agreement on October 6, 2008, under which the County would convey Lot 3 to Michael.

The total project contemplated for Lot 3 and additional land consists of Phase 1 and subsequent phases. Phase 1, at a minimum, will be an underground, public parking garage on Lot 3, containing at least 152 parking spaces. The County will convey Lot 3 to Michael in consideration of Michael's constructing the underground garage and conveying the garage back to the County as a unit in a condominium. Subsequent phases of the total project involve private buildings developed for mixed uses. Construction of Phase 1 will prevent enjoyment of the easement as it is currently used.

In July 2006, Michael began the process of seeking County Planning Board approval for the project plan. That approval, subject to fourteen pages of conditions, was obtained on September 15, 2009. The conditions with respect to 8204 Fenton Street include that Michael shall:

"i. install a commercial elevator inside the building convenient to the Fenton Street entrance;

. . . .

"vii. if the owners of the Applicant and the owners of [8204 Fenton Street] cannot agree to changes inside their building, the Applicant must provide one of two exterior options:

"1. an exterior elevator, as illustrated in the Project Plan staff report as 'Exterior Elevator Option'; or

"2. an exterior stair connecting the pedestrian bridge to the Fenton Street right-of-way, referred to in the Project Plan staff report as 'Exterior Stair Option.' " [2]

The parties have been unable to resolve their differences by agreement. In September 2010, the County Executive's office intervened and attempted to facilitate an agreement. In a letter of September 13, 2010, to the County's Assistant Chief Administrative Officer, reviewing its efforts to reach a negotiated solution, 8204 Associates included this statement: "Removing ... easy access and unilaterally installing a steep stairway so that a developer may maximize his profits, is a legal issue that we are prepared to move forward on, but we'd rather not." This evidences, Michael submits, that 8204 Associates will initiate litigation if Michael proceeds with the Exterior Stair Option.

The Exterior Stair Option would be a thirteen-step stairway affording access between the pedestrian bridge and Fenton Street. The stairway would be situated in the setback area for light and air between the north side of 8204 Fenton Street and the south side of the building to be constructed over the underground parking lot.

The County Executive's office abandoned its mediation efforts in December 2010. This litigation followed.

---

**2.** In its complaint, Michael inserted, in lieu of the wording of condition vii. 1, the following: "[an alternative construction rejected by both parties]."

Michael's declaratory judgment complaint asks the circuit court to answer this question:

"Does the implementation of the Exterior Stair Option as part of the Plan directed by the Planning Board comport with the terms of the Easement?"

8204 Associates moved to dismiss the complaint for want of a justiciable controversy. At a hearing on that motion, the circuit court ruled:

"I am going to grant the motion to dismiss. I do not believe that the suit as filed presents a justiciable controversy. To me, there are many different options spelled out in the Planning Board thing. It's not just limited to the exterior staircase and so I'm going to grant the motion to dismiss."

Michael timely appealed.

Michael presents the following question for our review:

"Is a 'justiciable controversy' presented by the disagreement of the parties over whether the implementation of the Exterior Stair Option, as directed by the Planning Board resolution, violates the recorded Easement?"

We interpret the circuit court's ruling to refer to the County Planning Board resolution of September 15, 2009. The motion to dismiss, however, admitted the factual allegations of the complaint which, in lieu of an "Exterior Elevator Option" as a condition acceptable to the Planning Board, alleged that that option had been "rejected by both parties." Further, in this Court, 8204 Associates points out that "what matters is not whether the Circuit Court's initial reasons for finding this matter nonjusticiable were the correct ones, but rather whether the nonjusticiability conclusion is correct." Basically, 8204 Associates submits that the circuit court was correct because Michael lacks standing to obtain a declaratory judgment constructing the Easement and because the controversy is not ripe for adjudication.

Additional facts will be stated in our discussion of the issues.

## Discussion

### I

The Court of Appeals has quoted with approval Anderson's concise definition of justiciability. "A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." 1 W. Anderson, *Actions for Declaratory Judgments* § 17 (2d ed. 1951) (Anderson). *See Hickory Point Partnership v. Anne Arundel County*, 316 Md. 118, 129, 557 A.2d 626, 631 (1989), *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 690, 526 A.2d 598, 601 (1987); *Patuxent Oil Co. v. County Comm'rs of Anne Arundel County*, 212 Md. 543, 548, 129 A.2d 847, 849 (1957). Michael, in essence, submits that its investment of time, effort, and treasure in satisfying the request for proposals, effecting the Agreement, and obtaining the conditional approval of the County Planning Commission, as well as its incentive to bring the project to fruition, is a sufficient interest in the easement issue to give Michael standing. 8204 Associates submits that Michael is not a party to the Easement and it is not an owner of either the dominant or servient estates. Nor is Michael an equitable owner of Lot 3 because the Agreement contains many conditions that have not been resolved, thereby precluding equitable conversion. *See Noor v. Centreville Bank*, 193 Md.App. 160, 167–68, 996 A.2d 928, 933, *cert. granted*, 415 Md. 607, 4 A.3d 512 (2010), *cert. dismissed*, 417 Md. 500, 10 A.3d 1180 (2011).

 Actions for a declaratory judgment are commonly used in resolving controversies over easements. *See Clickner v. Magothy River Ass'n*, 424 Md. 253, 35 A.3d 464 (2012); *Rogers v. P–M Hunter's Ridge, LLC*, 407 Md. 712, 967 A.2d 807 (2009); *Weems v. County Commissioners*, 397 Md. 606, 919 A.2d 77 (2007); *Banks v. Pusey*, 393 Md. 688, 904 A.2d 448 (2006); *Parker v. T & C Dev. Corp.*, 281 Md. 704, 381 A.2d 679 (1978); *Owen v. Hubbard*, 260 Md. 146, 271 A.2d 672 (1970); *Annapolis Roads Property Ass'n v. Lindsay*, 205 Md.App. 270, 45 A.3d 749 (2012); *Bacon v. Arey*, 203 Md.App. 606, 40

A.3d 435 (2012); *USA Cartage Leasing, LLC v. Baer*, 202 Md.App. 138, 32 A.3d 88 (2011), *cert. granted,* 425 Md. 227, 40 A.3d 39 (2012); *8621 Ltd. Partnership v. LDG, Inc.,* 169 Md.App. 214, 900 A.2d 259 (2006).

In our view, the correct rule as to standing is found in 1 Anderson § 159, at 300 where the author states:

"With respect to the right to maintain an action for declaratory relief 'interested' parties must, of course mean parties having a legal, protectible interest. The term 'legal interest' is not synonymous with the term 'cause of action,' since there may well arise a situation or a dilemma wherein the plaintiff is entitled to relief from uncertainty and insecurity over and beyond traditional statutory relief, or incidental thereto; and, in some instances, independent of any traditional relief. If the plaintiff can show that his rights are in direct issue or jeopardy, and at the same time show that the facts are complete and that this interest is not merely academic, hypothetical, or colorable, but actual, a 'legal interest' as related to a justiciable controversy may be shown, and he has a right to maintain his action. From what has been said, it may be observed that it is not always easy to determine whether or not the plaintiff's pleading sufficiently sets forth facts that are acute and personal so as to constitute 'legal' interest and, therefore, gave rise to the right of the plaintiff to maintain the action."

(Footnote omitted).

Relevant here is the observation by the Supreme Court of Arizona in *Woodward v. Fox W. Coast Theaters,* 36 Ariz. 251, 284 P. 350 (1930). The theater company had entered into a lease with the City of Phoenix under which it would construct a building at a cost of not less than $300,000. Rent commenced upon signing of the lease. A taxpayer of Phoenix served notice on the municipal authorities that he considered the lease to be invalid for multiple reasons. The theater company thereupon brought a declaratory judgment action, naming the taxpayer and the municipal authorities as defendants, to obtain a determination as to the validity of the lease.

In affirming a declaration that the lease was valid, the Arizona Supreme Court said:

"It would seem, in view of the improvements contemplated, their extent and the cost thereof, that plaintiff should, if possible, be assured that the lease is valid before making improvements. The building proposed to be constructed will become a part of the realty, and, should the lease be void or invalid and voidable, the investment would be a total loss to the plaintiff. When the validity of the lease is challenged on the ground of lack of power in the city to make it, or the incapacity of the plaintiff to make the contract, or any of the other grounds urged, safe and sound business demands that such questions be settled before the expenditure of so large a sum as $300,000, and such questions should be settled as early as convenient, because the covenant to pay the stipulated monthly rental begins at the commencement of the lease, to wit, July 19th, 1929."

*Id.* at 255, 284 P. at 351.

8204 Associates cites *Gardner v. Board of County Comm'rs,* 320 Md. 63, 576 A.2d 208 (1990), for the proposition that a financial interest is not a legally protected interest. The context of *Gardner* is distinguishable from the instant matter. In *Gardner,* property owners in a subdivision sought a judgment declaring void an ordinance that had been enacted based on the petition by other residents of the subdivision to have public roads built. An earlier case, *Board of County Comm'rs v. Gardner,* 79 Md.App. 417, 557 A.2d 260 (1989), had held that the joinder, as defendants, of all of the property owners in the subdivision was mandatory. because all had an interest in obtaining the benefit of roads. The Court of Appeals held that all of the property owners were not indispensable parties. That there might be some potential increase in value of property because it was adjacent to a public improvement was not sufficient. Here, however, we are dealing with the contract rights of the party who is undertaking to create the improvement for the benefit of the public and for its own benefit as developer. Thus, if 8204 Associates brought a declaratory judgment action against the County, as servient

owner, seeking to have the Easement construed to prevent any interference with the current use of Lot 3 for deliveries via the pedestrian bridge, Michael, as holder of the development rights under the Agreement, would be a necessary party to any such declaratory judgment action.

We conclude that Michael has standing.

## II

8204 Associates asserts that the controversy is not ripe for adjudication because there are many contingencies in the Agreement that must be satisfied or waived before Michael acquires title to Lot 3. To the extent that this argument is premised on a need for title to be in Michael, in order to have standing to seek a declaratory judgment, we have opined in Part I hereof to the contrary. The spin by 8204 Associates in this Part II, however, is that the controversy is not ready for decision.

In the Agreement, there are seven conditions precedent to Michael's obligation to proceed to settlement on Lot 3. One condition, for example, is that Michael "shall have received County's Final Design Approval[.]" Final Design Approval, for purposes of the Agreement, is final approval by the County of the "Concept Finalization Documents, Schematic Design Documents, Design Development Documents and Construct Documents." 8204 Associates argues that it is uncertain whether settlement will ever be held under the Agreement and, also, that it is possible that the parties to this action may settle.

In its argument, Michael emphasizes *Boyds Civic Ass'n,* 309 Md. 683, 526 A.2d 598, involving a property owner's challenge to an amendment to the Montgomery County Master Plan making a certain area eligible for reclassification to commercial use as a Mineral Resource Recovery Zone. The County argued that the amendment to the Master Plan was a mere authorization that did not require the zoning authorities to reclassify for that use. The Court of Appeals held that the declaratory judgment action would lie, principally because,

concomitantly with initiating the Master Plan amendment, the owner of the subject property had pending an application to amend the local zoning map to a Mineral Resource Recovery Zone use for its property. The Court of Appeals said that the "the prospect of a controversy therefore, lay well beyond the realm of matters 'future, contingent, and uncertain.'" *Id.* at 697, 526 A.2d at 605.

8204 Associates views Michael's complaint as an attempt to "obtain a present-day judicial imprimatur for a future time when, with all approvals in place, it will destroy Lot 3 and thereby extinguish the Easement, and replace the direct access from Lot 3 to 8204 Associates' premises with access via a long flight of stairs." In support of this analysis, considerable reliance is placed by 8204 Associates on *Anne Arundel County v. Ebersberger*, 62 Md.App. 360, 489 A.2d 96 (1985), a special tax district case.

The Indians Hills community in Anne Arundel County had been created as a special tax district in 1976 for the purpose of "'the construction, operation, maintenance and repair of certain community property and improvements[.]'" *Id.* at 364, 489 A.2d at 98. When the community swimming pool was forced to close for want of badly needed repairs, a majority of the property owners in the district petitioned to amend its tax ordinance to add, as an express purpose and power of the district, borrowing money and renovating the pool. The amendment was enacted in 1983.

The bylaws of the community association, in combination with an Anne Arundel County ordinance dealing generally with special tax districts, established a number of steps before the County Council could levy a rate for Indian Hills. The steps were: the Board of Directors of the community association establish a budget; two-thirds of the members of the association vote to adopt the budget; the budget conforms to the requirements of the County Budget Office; and the County Council levies a rate which, together with any unencumbered surplus in the special tax district's benefit fund, will support the expenditures proposed in the budget. The first

budget proposed by the Indian Hills Board of Directors under the 1983 amendment included debt service on a loan for pool repairs, but that budget failed to obtain membership approval. That proposed budget called for a special benefit tax of 38.3¢/$100. A revised budget that did not contain debt service was adopted, resulting in a rate of 7.8¢/$100. If, however, the Board of Directors were successfully to take advantage of the authority to borrow money for pool repairs, a rate of 30¢/$100 would be required, without including maintenance and operational costs.

Against that background, certain taxpayers in Indian Hills sued, seeking a declaration that the 1983 amendment to the ordinance was unconstitutional or *ultra vires.*

This Court held that the action was not ripe. We said:

"There is certainly no assurance, from the record now before us, that a budget containing an appropriation for the pool will ever be approved or that a special benefit tax to support such an appropriation will ever be levied.

"At least until the prospect of such an appropriation or such a tax becomes substantially more certain, the plaintiffs will have suffered no injury from the challenged ordinance, and its validity or invalidity is therefore of no practical consequence. This is particularly so in light of the basis for the circuit court's ruling, namely, that 'the pool was not a part of the development of a comprehensive recreational program.' Whether that would remain true at such time as the district might effectively choose to renovate the pool is anyone's guess."

*Id.* at 371, 489 A.2d at 101–02.

■ *Ebersberger* is not analogous to the case before us. Here, matters have progressed far beyond a mere authorization. The project moved from mere authorization in the Silver Spring Central Business District Sector Plan to the first step of implementation when the County issued its request for proposals. Implementation progressed when Michael responded. After nearly four years of work on the venture, Michael obtained the General Development Agreement and

the conditional approval of the Planning Board. Extensive, but unsuccessful, negotiations consumed another year. Michael now is seeking a construction of the Easement. The terms of the Easement are a known constant. 8204 Associates' position, that the Exterior Stair Option violates the Easement, is a known constant. At some point in the process of refining the drawings to the stage of construction drawings, a condition precedent to the County's obligation to close on the title, Michael will have to show the Exterior Stair as part of Phase 1. Under all of these circumstances, we hold that the circuit court abused its discretion in holding that the controversy was not justiciable. Michael need not wait until it is sued in order for Michael to obtain a judicial determination of whether the Exterior Stair Option violates the Easement.

For these reasons, we reverse the judgment of the Circuit Court for Montgomery County and remand this action for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE APPELLEE, 8204 ASSOCIATES LIMITED LIABILITY COMPANY.**