REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2212

September Term, 2015

_____

CLEANWATER LINGANORE, INC. ET AL.

v.

FREDERICK COUNTY, MARYLAND ET AL.

_____

Kehoe,
Berger,
Harrell, Glenn T.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Berger, J.
_____

Filed:  February 3, 2017

This case is the most recent in a series of cases to come before us challenging various issues related to development in the Lake Linganore area of Frederick County. In this appeal, we address a challenge by the Appellants[1] to the Frederick County Board of County Commissioners' ("BOCC")[2] approval of a Development Rights and Responsibilities Agreement ("DRRA"). The Appellants present three issues for review on appeal, which we have reordered and rephrased slightly as follows:

1. Whether the DRRA violates § 7-304 of the Land Use Article of the Maryland Code, Md. Code (2012, 2014 Repl. Vol.).

2. Whether the DRRA lawfully contains a provision providing that the DRRA constitutes a covenant running with the land.

3. Whether the DRRA is void because it lacks any "enhanced public benefits" and/or consideration.

For the reasons explained herein, we shall hold that the DRRA is void for lack of enhanced public benefits and reverse the judgment of the Circuit Court for Frederick County.

**FACTS AND PROCEEDINGS**

This is an administrative appeal from an opinion and order of the Circuit Court for Frederick County affirming two separate actions of the BOCC, a rezoning action and the DRRA approval. Although the Appellants raised issues with respect to both actions before the circuit court, on appeal to this Court, the Appellants have raised issues only with respect

---

[1] The Appellants are Cleanwater Linganore, Inc., RALE, Inc., Nikki Chauvin, Jimmy and Joyce Duffy, Paul and Tracy Garcia, Dang Mindte, Carrie Payne, Pamela Pennington, Patricia Wells, Carol Swandby, and Reggie Wade.

[2] On December 1, 2014, Frederick County became a charter county, replacing the BOCC with a County Executive and a County Council. *See* Frederick County Charter.

to the DRRA approval. Nonetheless, we set forth certain facts and proceedings relevant to both issues in order to provide context.

This case involves two parcels of land ("the Property") owned by the Blentlinger family. The Blentlinger family farmed the Property for multiple generations before deciding to explore development opportunities. Until 2007, the Property had a Low Density Residential ("LDR") land use designation, pursuant to which a property owner is permitted to apply for a Planned Unit Development ("PUD"). In 2007, the BOCC reclassified the Property and removed the LDR designation, rendering the Property ineligible for PUD designation. In 2012, however, the BOCC again reclassified the Property (as well as multiple other properties in the Lake Linganore area) as LDR. The 2012 rezoning action was challenged before the circuit court in this case and was unsuccessfully challenged in various other appeals before this Court.[3] The 2012 rezoning action is not an issue in the present appeal.

---

[3] This is at least the sixth case to come before this Court challenging development in the Lake Linganore area of Frederick County, all of which affirmed the judgments of the Circuit Court for Frederick County and/or dismissed the appeal filed by the appellants. The previous cases before this Court were:

- *Cleanwater Linganore, Inc., et al. v. Frederick County, Maryland, et al.*, ___ Md. App. ___, No. 1917, Sept. Term 2015 (filed Dec. 28, 2016) (addressing the merits of an identical freeze provision issue and holding that a freeze provision in a DRRA may include a broader range of local laws than only zoning ordinances).

- *Citizens of Linganore Opposed to Gridlock, et al. v. Board of County Commissioners of Frederick County, et al.*, No. 1273, Sept. Term 2014 (filed July 15, 2015) (unreported opinion) (addressing identical DRRA freeze provision issue).

After the Property was rezoned as LDR, Lillian C. Blentlinger, LLC and William L. Blentlinger, LLC ("the Blentlingers"), appellees, filed a PUD zone application for the Property on February 25, 2014. The Blentlingers filed a DRRA petition on March 11, 2014, which included a draft DRRA. The BOCC accepted the DRRA petition on April 15, 2014. After two public hearings before the Frederick County Planning Commission and one public hearing before the BOCC, the BOCC voted to approve the PUD rezoning application and the proposed DRRA. The PUD rezoning application was approved with conditions that limited the total unit count to 675 residential dwelling units, consisting of 500 single-family units and 175 townhomes.[4] An additional condition required that the first building permit for the construction of a residence not be issued before January 1, 2020. The BOCC enacted the PUD rezoning ordinance and executed the final DRRA on

- *Friends of Frederick County, et al. v. County of Frederick, Maryland*, No. 2159, Sept. Term 2013 (filed August 11, 2015) (unreported opinion) (affirming the BOCC's adoption of the 2012 Zoning Map and the 2012 Comprehensive Plan).

- *Citizens of Linganore Opposed to Gridlock, et al. v. Board of County Commissioners of Frederick County, et al.*, No. 738, Sept. Term 2014 (filed August 25, 2015) (unreported opinion) (addressing 2012 Comprehensive Rezoning and BOCC approval of a PUD).

- *Friends of Frederick County, Inc., et al. v. Frederick County Board of Appeals, et al.*, No. 2497, Sept. Term 2013 (filed October 23, 2015) (unreported opinion) (granting a motion to dismiss on the basis the appellants' challenge to a DRRA was not authorized under a previous version of LU § 7-307).

[4] Under Frederick County Code § 1-19-10.500(H)(1)(a), a maximum of 1,674 dwelling units are permitted for the Property with PUD zoning.

3

November 24, 2014. The final DRRA ("the Blentlinger-County DRRA") was recorded in the Land Records of Frederick County on the same date.

The Appellants filed a petition for judicial review of both the PUD and DRRA actions in the Circuit Court for Frederick County. The circuit court upheld both actions. This timely appeal followed.

## STANDARD OF REVIEW

In general, although we generally defer to the factual findings of an administrative agency, "[w]e review an agency's decisions as to matters of law *de novo* for correctness." *Wallace H. Campbell & Co. v. Maryland Comm'n on Human Relations*, 202 Md. App. 650, 663 (2011). However, "[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Grasslands Plantation, Inc. v. Frizz-King Enterprises, LLC*, 410 Md. 191, 204 (2009) (quoting *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69 (1999)).

## DISCUSSION

## I.

A DRRA is "an agreement between a local governing body and a person having a legal or equitable interest in real property to establish conditions under which development may proceed for a specified time." Md. Code (2012, 2014 Repl. Vol.), § 7-301(b) of the Land Use Article ("LU"). DRRAs are attempts to balance "developers' and property owners' desires for a larger measure of certainty than that offered by proceeding to market

4

through the traditional development processes, while risking the monetary investment to develop their property, against local governments' desire to receive greater public benefits on a more predictable schedule than might otherwise be attainable through the traditional processes." *Queen Anne's Conservation, Inc. v. Cty. Comm'rs of Queen Anne's Cty.*, 382 Md. 306, 308-09 (2004).

One feature of a DRRA is that certain local laws, rules, regulations, and policies are "frozen" at the time the DRRA is executed. This "freeze provision" permits developers to move forward with long-term development projects with certainty. The "freeze provision" is set forth in LU § 7-304, which provides:[5]

> (a) Except as provided in subsection (b) of this section, the local laws, rules, regulations, and policies governing the use, density, or intensity of the real property subject to an agreement shall be the local laws, rules, regulations, and policies in force at the time the parties execute the agreement.
>
> (b) If the local jurisdiction determines that compliance with local laws, rules, regulations, and policies enacted or adopted after the effective date of an agreement is essential to ensure the public health, safety, or welfare, an agreement may not prevent a local government from requiring a person to comply with those local laws, rules, regulations, and policies.

The Appellants argue that the Blentlinger-County DRRA is invalid because it violates LU § 7-304 by purporting to "freeze" certain local laws, rules, regulations, and policies beyond

---

[5] We emphasize that the DRRA Act only authorizes the freezing of local laws, LU § 7-304, and does not, by its own terms, grant the authority to freeze state or federal laws.

5

those specifically identified in LU § 7-304.  Specifically, Section 8.1 of the Blentlinger-County DRRA provides:

> *8.1  Effect of Agreement*
>
> A.  Except as otherwise specifically provided herein, the local laws, rules, regulations and policies governing the use, density, or intensity of the Property, including but not limited to those governing development, subdivision, growth management, impact fee laws, water, sewer, stormwater management, environmental protection, land planning and design, and adequate public facilities (hereinafter collectively the "Development Laws") shall be the laws, rules, regulations and policies, if any, in force on the Effective Date of the Agreement, and the Developer shall comply with all Development Laws.

Before turning to the merits of this issue, we comment briefly on whether this issue is ripe for our review.  "A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded."  *Michael, LLC v. 8204 Assocs. Liab. Co.*, 207 Md. App. 666, 672 (2012) (quoting 1 W. Anderson, *Actions for Declaratory Judgments* § 17 (2d ed. 1951)).  We recently found a nearly identical issue regarding the scope of a DRRA freeze provision ripe for review and addressed the merits. *Cleanwater Linganore, Inc., et al. v. Frederick County, Maryland, et al.*, ___ Md. App. ___, No. 1917, Sept. Term 2015 (Ct. of Spec. App. Dec. 28, 2016) ("*Casey*").[6]

---

[6] That case has the same parties listed in the case caption as the present appeal but involved a separate developer and challenged a separate DRRA.  The DRRA in Case No. 1917, Sept. Term 2015 was between the Eugene B. Casey Foundation and Frederick County.  For clarity, we shall refer to that case as "*Casey*."

In our view, this case presents "an accrued set of facts, beyond the merely theoretical, that bears directly on the justiciable question[s]" of whether the Blentlinger-County DRRA properly froze a wide range of laws, whether the Blentlinger-County DRRA lawfully contains a provision providing that it runs with the land, and whether the Blentlinger-County DRRA is supported by adequate consideration and/or enhanced public benefit pursuant to the DRRA Act. *See id.*, slip op. at 10. At oral argument, neither party disputed this issue is ripe for our consideration. Further, the parties agreed at oral argument that the issues in this appeal are ripe for our consideration. Of course, the parties, by agreement, may not confer jurisdiction on a court where none exists; however, we conclude for other reasons expressed above that the questions presented here are ripe for appellate review. As such, we will address the merits in the present appeal.

We now turn to the merits of the DRRA freeze provision issue and consider whether § 8.1 of the Blentlinger-County DRRA contains an impermissibly broad range of laws. This Court recently addressed this issue at length in *Casey*, *supra*. All of the laws, regulations, and policies listed in § 8.1 of the Blentlinger-County DRRA were also included in the *Casey* DRRA, which provided as follows:

> Except as otherwise provided . . . the County Development Laws, regulations[,] and policies governing the use, density[,] or intensity of the Property, including but not limited to those governing development, subdivision, zoning, comprehensive planning, moderately priced dwelling units, growth management, impact fees, water, sewer, stormwater management, environmental protection, land planning and design, adequate public facilities laws[,] and architecture shall be the laws, rules, regulations[,] and policies, if any, in force on the Effective Date of the Agreement.

7

*Casey* DRRA § 8.1.

In *Casey*, we concluded that "the intended scope of 'the local laws, rules, regulations, and policies' that 'govern[] the use, density, or intensity' of real property" was "ambiguous on its face." slip op. at 12. Accordingly, we engaged in an exhaustive review of the legislative history of the DRRA Act. We explained that the Fiscal Note for HB 700, the original bill that became the DRRA Act in 1995, as well as the Senate Economic and Environmental Affairs Committee Floor Report, "demonstrate that the General Assembly was aware of, and contemplated presumably, the DRRA Act's freeze provision to embrace more than merely zoning ordinances, including something as seemingly attenuated as a variety of fees related to development." *Id.* at 14.

Having established that the legislature intended the DRRA freeze provision to apply to a wider range of laws than merely zoning laws, we turned to the specific ordinances and regulations referenced in the *Casey* DRRA § 8.1. We explained:

> It is patent that local zoning ordinances govern most directly the "use, intensity, or density" of real property. Subdivision ordinances and regulations, as well as many environmental and public facility or utilities laws (enforced typically during the subdivision process) are to like effect. Costs and fees associated with public facilities impacts, permits, and water and sewer hookups, on the other hand, seem at first glance rather more attenuated from direct governance of a property's "use, intensity, or density." And yet, the DRRA Act's legislative history demonstrates the Legislature's contemplated inclusion of them as well as among reachable local laws for purposes of LU § 7-304(a). Viewing relevant local provisions on a continuum from the most direct governance to the least contemplated by the freeze provision, zoning and subdivision would be located at one end and fees at the other. Assuming these outer limits for purposes of the DRRA in the present case, the freeze provision must

8

contemplate, axiomatically, local laws, rules, regulations, and policies that might fit between these poles. Local provisions related to development, comprehensive planning, moderately-priced dwelling units, growth management, environmental protection, land planning and design, adequate public facilities laws, and architecture govern more clearly "use, intensity, or density" than do, for example, impact and permit fees. We conclude, therefore, that the Maryland General Assembly intended the DRRA Act's freeze provision to contemplate each of the genres of local laws listed in Article VIII § 8.1(B) of the Casey-County DRRA.

*Id.* at 15. Because all of the laws, regulations, and policies listed in § 8.1 of Blentlinger-County DRRA were also included in the *Casey* DRRA, the same reasoning applies to the present appeal. Accordingly, we conclude that the General Assembly intended the DRRA freeze provision to include each of the genres of local laws listed in § 8.1 of the Blentlinger-County DRRA.

In *Casey*, we found further support for a broad reading of the DRRA Act freeze provision by examining the purpose behind the DRRA Act. *See id.* at 16-18. We discussed the legislative purpose as follows:

> In its 1995 analysis of H.B. 700, the House Commerce and Government Committee explained that State DRRA laws seek to "solve the vesting problem" by "(1) prohibiting local governments from applying new regulations to on-going projects by defining when vesting occurs, and (2) authorizing the use of development agreements." H. COMMERCE AND GOV'T COMM., BILL ANALYSIS, H.B. 700, at 3 (Md. 1995).[7] The "vesting problem" refers to the balancing of a developer's interest in securing and consolidating its legal footing to begin and complete a development project with a local jurisdiction's interest in governing the pertinent legal domains, including

---

[7] The cited content of this BILL ANALYSIS is mirrored in a rearranged format in S. ECON. AND ENVTL. AFFAIRS COMM., BILL ANALYSIS, H.B. 700, at 2-3 (Md. 1995). [Footnote in original.]

9

amending laws and policies as necessary. In 1993, the Court of Appeals held that a developer's rights in the development of a property vest only upon a level of visible commencement of lawful construction. *Prince George's Cnty., Md. v. Sunrise Dev. Ltd. P'ship*, 330 Md. 297, 623 A.2d 1296 (1993). This opinion recognized that local governments may "change a permissible land use . . . very late in the land use approval process. In fact, a change could occur after the issuance of a building permit." BILL ANALYSIS at 3. The purpose of the DRRA Act, therefore, was to strike a balance between the interests of developers and local governments to "solve the vesting problem."

The House Commerce and Government Committee explained such a balance as follows:

> Development agreements can provide benefits for both developers and local governments. For the developer, a development agreement establishes the rules and regulations which will govern the project throughout its construction, and perhaps beyond. For the local government, the development agreement provides for greater certainty in the comprehensive planning process, as well as an opportunity to ensure the provision of necessary public facilities.

BILL ANALYSIS at 3.

What would achieve best the legislative purpose of balancing a developer's interest in legal stability against a local government's interest in certainty and obtaining enhanced public benefits: limiting, for example, the Casey DRRA's freeze provision to subsequent changes in the zoning code only, as urged by CLI, or allowing it to apply to the expansive list of local provisions in the negotiated DRRA as written? If the DRRA Act only allowed DRRAs to freeze the application of local zoning ordinance provisions, a local government could undermine still the legal and financial stability of an on-going development project by changing the laws related to, for example, development or site plans, subdivision, or planning compliance. Where a developer assumed that its project could be thwarted by a last-minute or mid-stream change to any of

10

> these non-zoning laws, it would be less likely to undertake a substantial development at all in a jurisdiction. This, in turn, would frustrate the local government's interest in obtaining greater public benefits through negotiation of a DRRA's terms.

*Id.* at 16-18. The reasoning applied in *Casey* compels the same conclusion in this case. As in *Casey*, "[w]e conclude that, like its statutory history, the purpose of the DRRA Act suggests a more expansive reading of the local laws eligible for inclusion in a DRRA's freeze provision, beyond merely the local zoning ordinance, that includes at least the local law provisions listed in the" Blentlinger-County DRRA. *Id.* at 18. We, therefore, hold that the BOCC's approval of the Blentlinger-County DRRA, including the freeze provision set forth in § 8.1, does not impermissibly expand the scope of local laws, rules, regulations, and policies governing use, density, or intensity beyond the limits of LU § 7-304.[8]

## II.

We next consider the Appellants' argument that the DRRA impermissibly included a provision providing that the DRRA constitutes a covenant running with the land. The Appellants maintain that Maryland DRRA law does not authorize a DRRA to be converted into a real property interest. The Blentlingers respond that Maryland and Frederick County law require a DRRA to be recorded and thus to run with the land and that the language of the DRRA merely confirms what is already required under Maryland and Frederick County law. We agree with the Blentlingers.

---

[8] In light of our determination that § 8.1 of the Blentlinger-County DRRA is not impermissible, we need not address whether § 8.1 should be excised from the DRRA or whether it should be stricken and replaced with the precise language of the statutory freeze provision.

First, we observe that Maryland law requires that all DRRAs be recorded in the land records of the local jurisdiction. LU § 7-305(d). With respect to the recordation requirement, LU § 7-305(d) provides:

> (1)     If [a DRRA] is not recorded in the land records of the local jurisdiction within 20 days after the date on which the parties execute the [DRRA], the [DRRA] is void.

> (2)     The parties to [a DRRA] and their successors in interest are bound to the agreement after the agreement is recorded.

*Id.* The statute plainly provides that a properly recorded DRRA binds not only the parties to the DRRA, but any successors in interest as well. *Id.* Section 1-25-10 of the Frederick County Code of Ordinances contains language identical to that in LU § 7-305(d).[9]

Article IV of the Blentlinger DRRA provides, in relevant part:

> This Agreement shall constitute covenants running with the land and shall bind the Property so long as the Project is under development, provided that this Agreement shall terminate and be void twenty-five (25) years after the Effective Date of this Agreement unless extended by an amendment complying with all procedures required in this Agreement.

In our view, the language of the Blentlinger DRRA simply confirms what is required by law. Furthermore, the Blentlinger DRRA satisfies the test set forth by the Court of

---

[9] Section 1-25-10 of the Frederick County Code of Ordinances provides:

> (A)   An agreement not recorded in the Land Records of Frederick County within 20 days after the day on which the county and the applicant execute the agreement is void. Either the applicant or the county may record the agreement.

> (B)   The county and the applicant, and their successors in interest, are bound to the agreement after the agreement is recorded.

12

Appeals for covenants running with the land. In *Mercantile-Safe Deposit & Trust Co. v. Mayor & City Council of Baltimore*, 308 Md. 627, 632 (1987), the Court of Appeals explained that four elements must be satisfied for a covenant to run with the land:

> (1) the covenant must touch and concern the land;
>
> (2) the original covenanting parties must intend the covenant to run with the land;
>
> (3) there be some privity of estate; and
>
> (4) the covenant must be in writing.

The first element, that the covenant must touch and concern the land, is easily satisfied because the entirety of the DRRA concerns the development of the Property. The second element is similarly easily satisfied. The original covenanting parties -- the County and the Blentingers -- clearly and unambiguously expressed in Article IV of the Blentlinger DRRA that they intended the DRRA to run with the land.

We additionally agree with the circuit court that the third element, requiring privity of estate, is satisfied. We have explained:

> Privity of estate can be satisfied by proof of vertical privity, which focuses . . . on the devolutional relationships. For vertical privity to be satisfied, it only is necessary that the person presently claiming the benefit, or being subjected to the burden, is a successor to the estate of the original person so benefitted or burdened.

*Select Portfolio Servicing, Inc. v. Saddlebrook W. Util. Co., LLC*, 229 Md. App. 241, 270 (2016), cert. granted, ___ Md. ___, (No. 413, Sept. Term 2016) (internal quotations and citations omitted). In this case, the original parties continue to hold interests in the Property. As the circuit court explained, and we agree, the Blentlingers "have a continuing

13

interest in the Property as the owner, and the County government has continuing interest as the regulator of the development of the Property." Finally, the fourth element, requiring the covenant to be in writing, is satisfied because the DRRA is a written document.

The Appellants cite no authority in support of their position that a DRRA cannot include a provision specifying that the DRRA is a covenant running with the land.[10] We hold that because the DRRA satisfies the test set forth in *Mercantile-Safe Deposit and Trust Co.*, *supra*, the DRRA is a covenant running with the land. The language of the DRRA confirms that which is already required under Maryland law. Accordingly, we reject Appellants' covenant running with the land argument.

## III.

The Appellants' third contention is that the DRRA is void for lack of consideration because it lacks any "enhanced public benefits" to the County. We agree.

The local governing body of a local jurisdiction, such as Frederick County, is authorized to establish proceedings and requirements for the consideration and execution of DRRAs. LU § 7-301(b). Frederick County's DRRA regulations mirror those regulations embodied in the Land Use Article. Those regulations are set forth in Chapter 1-25 of the Frederick County Code.

---

[10] The Appellants argue that "labelling the DRRA as covenants that run with the land would materially affect the local governing body's ability to exercise its authority under [LU §] 7-305(g)(2)," which provides that a public principal or local governing body may suspend or terminate a DRRA after a public hearing if suspension or termination of the DRRA is essential to ensure public health, safety, or welfare. The Appellants do not, however, provide any authority that suggests that the running with the land provision is impermissible.

We recently noted that "DRRAs generally are bargained-for agreements between property owners/developers and local jurisdictions that, among other things, provide for 'freezing,' as of the date of the agreement, the application of certain extant local laws and regulations during a fixed period of time coinciding typically with the estimated build-out of the proposed development, as long as the period does not exceed the statutory 'cap.'"[11] *Casey, supra*, slip op. at 3-4.

By agreeing to enter into a DRRA in Maryland, a local government grants rights to a property owner and insulates those rights from legal changes for a minimum of five years. The consideration provided to a local government by a property owner under a DRRA is not constrained by the constitutional limitations of "nexus" and "rough proportionality." *See Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994); *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987). The voluntary nature of a DRRA allows a local government to negotiate public infrastructure improvements or other public benefit features beyond those that it may otherwise attain.

In *Casey*, we reviewed the purpose of DRRAs and observed that:

> Obtaining forbearance of the application of subsequent changes in relevant local laws provide certainty and stability to developers, whose projects may take many years to complete and/or sell-off or lease. Local government derive, in return, negotiated greater public benefits than may be attained through typical governmental exactions or conditions of development approvals.

---

[11] Section 1-25-12 of the Frederick County Code provides that a DRRA "shall be void 5 years after the day on which the parties execute the agreement unless the agreement provides a shorter or longer duration or unless extended by amendment . . . ."

Slip op. at 4.

Every DRRA is required to include "a description of the conditions, terms, restrictions, or other requirements determined by the local jurisdiction to be necessary to ensure the public health, safety, or welfare." LU § 7-303(c)(9). Section 7-303(c)(10) further requires that a DRRA shall include "to the extent applicable, provisions for the: (i) dedication of a portion of the real property for public use; (ii) protection of sensitive areas; (iii) preservation and restoration of historic structures; and (iv) construction or financing of public facilities." The Appellants maintain that the purpose of these provisions in the Land Use Article is to require the local governing body to specifically identify the enhanced public benefits that the locality expects to receive in exchange for entering into a DRRA. Frederick County and the Blentlingers contend that they need not identify any "enhanced benefit" and that they only need to demonstrate that the DRRA is supported by adequate consideration.

In our view, this involves an issue of contract law. As the Court of Appeals observed in *Queen Anne's Conservation, Inc.*, *supra*, 382 Md. at 332, a DRRA "is a contract whose purpose is to vest rights under zoning laws and regulations, in consideration of enhanced public benefits." Further, the legislative history of House Bill 700, titled "Real Property – Development Rights and Responsibilities Agreements" -- which ultimately became the DRRA Act in 1995 -- addresses the purpose of DRRAs as providing benefits to both developers and local governments. The House Commerce and Government Committee Bill Analysis and the Senate Economic Affairs Committee Bill Analysis provides the following background regarding the bill:

16

> Development agreements can provide benefits for both developers and local governments. For the developer, a development agreement establishes the rules and regulations which will govern the project throughout its construction, and perhaps beyond. For the local government, the development agreement provides for greater certainty in the comprehensive planning process, as well as an opportunity to ensure the provision of necessary public facilities.

In the instant case, the Blentlinger-County DRRA contained multiple binding promises which the Blentlingers and the County contend constitute consideration under Maryland law. Sections 3.1 through 3.3 of the DRRA include promises by the developer to abide by Frederick County's Adequate Public Facilities Ordinance with respect to road, sewer, and water improvements. The DRRA provides that the Blentlingers agreed to "either construct or fund the construction of certain road improvements or contribute to escrow funds for roads improvements, all as will be comprehensively set forth in an Adequate Public Facilities Ordinance Letter of Understanding." *See* § 3.1 of the DRRA, entitled "Road Improvements." With respect to water and sewer improvements, the Blentlingers agreed to "pay tap fees in accordance with the current fee schedule in effect at the time of permit application." *See* §§ 3.2 and 3.3 of the DRRA, entitled "Sewer Improvements" and "Water Improvements." The Blentlingers further agreed to pay the applicable school construction and impact fees. *See* §§ 3.4 and 3.5 of the DRRA, entitled "School Construction Fee" and "School Impact Fees."

In our view, these provisions of the DRRA do not reflect enhanced obligations of the developer. Rather, they reflect the obligations the developer would otherwise be required to satisfy during the course of the development of the property if no DRRA were

17

in place.  Indeed, the benefits relied upon by the developer (specifically those relating to road, sewer, water improvements, and tap fees) are required of the developer under the County's Adequate Public Facilities Ordinance.

The disagreement between the parties surrounds a provision in the DRRA *sub judice* that contains what may appear to be a promise by the developer to convey to the Frederick County Board of Education a parcel for a public school that arguably serves as an enhanced public benefit to Frederick County and its citizens.  Section 3.4.C of the Blentlinger-County DRRA provides that:

> The Developer shall convey in fee simple to the Frederick County Board of Education ("BOE"), with no monetary consideration paid, the Public School Site shown on Exhibit 6, totaling a minimum of 24.5$\pm$ buildable acres, to the BOE [Board of Education] upon i) its reconsideration of the first subdivision plan for lots in the Project; and ii) BOE's acceptance of the conveyance of land for Public School Site.

The circuit court expressly relied on the developer's agreement to dedicate a site for construction of a middle school in holding the DRRA in this case was supported by adequate consideration.  The Appellants maintain that the circuit court erred because the dedication of the school site was not required as a condition of conferring DRRA approval to the developer.  Instead, they argue that such a dedication is a standard rezoning requirement in any large Frederick County zoning project.

The Appellants further maintain that the school site must be given to obtain rezoning of the property rather than as an enhanced public benefit in exchange for a DRRA.  Indeed, at the Board of County Commissioners' meeting on November 6, 2014, Jim Gugel, Planning Director of the Frederick County Government Division of Community

18

Development, testified that the Developer would have been required to proffer the site to build a middle school for the County even without a DRRA. The record reflects the following colloquy:

> [APPELLANTS' COUNSEL]: Would this property owner be required to proffer the – the middle school site whether or not there is a DRRA in this case?
>
> MR. GUGEL: Well, the PUD, I mean it – the new PUD regulations do give that discretion in requiring public site dedication. The old regulations were kind of on a per acre basis. But given the symbol on the site and the rezoning request, *it would have been conditioned even without a DRRA*.

Emphasis added.

We need not decide whether the conveyance of a middle school site constitutes an enhanced public benefit to Frederick County. Critically, the DRRA in the instant case merely requires the developer to proffer the site, which the Board of Education, in its discretion, could accept or decline. The record before the Board of County Commissioners reflects the following testimony:

> [APPELLANTS' COUNSEL]: And under the school dedication requirement I just would like to confirm that there is no guarantee that the school site will be dedicated, it's contingent on acceptance by the Board of Education; is that correct?
>
> MR. GUGEL: Yeah, the site itself. I mean, the Phase I PUD does establish thresholds, timing thresholds of when the dedication and conveyance must occur.
>
> [APPELLANTS' COUNSEL]: But acceptance depends on the Board of Education?
>
> MR. GUGEL: Correct.

19

Mr. Gugel further testified that if the BOE does not accept the dedication of the middle school site, the developer would then retain fee simple ownership of the land that was previously identified as totaling a minimum of 24.5± buildable acres. The DRRA expressly provides that:

> In the event that the BOE does not approve the Public School Site or determines not to accept conveyance of the Public School site, then Developer shall retain fee simple ownership of the Public School Site and may use the Public School Site in a manner consistent with other uses with the Project.

DRRA § 3.4.C, entitled "School Site Dedication."

Because the Developer retains fee simple ownership of the middle school site if the BOE "does not approve the Public School site or determines not to accept conveyance of [the site]," this "benefit," at the time of execution and recordation of the DRRA, was a conditional promise and potentially an illusory one to boot. Indeed, the offer by the developer to proffer the property in fee simple is not a definitive compulsory obligation to do anything other than offer the site for a middle school contingent on acceptance by the Board of Education.

Absent the conditional conveyance of the site for the middle school, the developer cannot identify any legally recognizable enhanced public benefit to Frederick County in connection with the DRRA. The testimony before the Board of County Commissioners contains the following exchange:

> [APPELLANTS' COUNSEL]: [W]ould the applicant please explain what greater public benefits the DRRA provides above and beyond those that would otherwise be obtainable absent the DRRA?

20

[DEVELOPER'S COUNSEL]: A certainty that the project would not lose zoning, wouldn't lose density, wouldn't lose its comprehensive plan . . . You know, all of that is certainly public benefit . . . .

[APPELLANTS' COUNSEL]: And what you described certainly would reflect the certainty that the property owner would achieve as a result of the DRRA, but what are the greater public benefits in terms of infrastructure or other—

[DEVELOPER'S COUNSEL]: I mean, it's one and the same . . . . [H]ow is it to the greater good or how is it to [sic] public benefit, and by public meaning not just a property owner if the – if zoning can change willy-nilly, if property rights can be given and taken away based on, you know, however the winds change. I mean, it's Maryland law. I mean, obviously it's – the way common law in Maryland has developed it's that zoning is up for grabs unless there's valid – unless there's recognizable vertical construction based on a validly issued building permit, all the parties have tried to address this through legislation at the state in terms of vesting and this was the compromise . . . As my co-counsel Mr. Rose is referencing, I mean, the school site, the roads, the representations as to making all of the improvements that are required under the APFO, I mean, it's all right here.

As the developer's testimony and its counsel's argument reflects, the public benefit conferred by the DRRA consists of the developer's vested rights in the project and the applicant's obligations to satisfy Adequate Public Facilities Ordinance ("APFO") infrastructure requirements. Clearly, every development must satisfy APFO requirements regardless of whether a DRRA is executed. A DRRA, in contrast, requires the applicant to provide some public benefit beyond complying with statutory land use standards and otherwise satisfy Adequate Public Facilities Ordinance infrastructure requirements. The DRRA *sub judice* does not require the applicant to unconditionally convey property for a middle school or otherwise provide any extra or enhanced benefit to Frederick County or

21

its citizens.  Accordingly, under the circumstances of this case, the DRRA is void for lack of consideration.

> **JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED.  CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY WITH INSTRUCTIONS TO VACATE THE BLENTLINGER-COUNTY DRRA.  COSTS TO BE DIVIDED EQUALLY AMONG THE PARTIES.**